**Maureen Murphy SOULES, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT
NO. 518, Respondent.**

No. 46573.

Supreme Court of Minnesota.

Aug. 26, 1977.

William Taylor, Slayton, for appellant.

Brecht, Hedeen & Hughes, and Arnold W. Brecht, Worthington, for respondent.

Heard before ROGOSHESKE, PETERSON and KELLY, JJ., and considered and decided by the court en banc.

ROGOSHESKE, Justice.

Plaintiff, Maureen Murphy Soules, brought this breach-of-contract action for reinstatement as an elementary school teacher and for damages upon allegations of wrongful termination of her continuing contract of employment with defendant, Independent School District No. 518. The district court, determining that the school district failed to comply with statutory procedures of notice and hearing required for the termination of plaintiff's continuing contract under the Minnesota Teachers' Tenure Act, Minn.St. 125.12, granted plaintiff's motion for partial summary judgment and ordered her reinstated. Following her reinstatement on January 13, 1975, the issue of damages was tried by the court sitting without a jury. The court found, unchallenged on this appeal, that plaintiff sustained $17,401.48 in damages, representing unpaid salary, insurance benefits, and interest for the 2½-year interval between the date of her wrongful termination and the date of her reinstatement. The court, however, reduced that amount by $9,100 upon finding that plaintiff failed to mitigate her loss, and accordingly judgment was entered for $8,301.48. Upon plaintiff's appeal challenging the ordered reduction, we hold that in accordance with a proper application of the rule of avoidable consequences the amount of the reduction lacks

evidentiary support, requiring a remand for modification of the judgment increasing plaintiff's recovery to $11,095.82.

It is undisputed that from the school term beginning in 1967 to the term ending in 1972 plaintiff was employed by defendant school district under five separate 1-year contracts to teach remedial reading on a part-time, half-day basis at St. Mary's Parochial School in Worthington. The remedial reading program was funded on a year-to-year basis by the Federal government under Title I of the Elementary and Secondary Education Act of 1965.[1] Under an arrangement between officers of defendant school district and St. Mary's, however, one of the parochial school's teachers actually taught the Title I program, while plaintiff was a regular elementary classroom teacher.[2] When plaintiff's 1971–72 contract expired, it was not renewed. Since defendant, through its board, neither gave plaintiff notice of termination nor granted her a hearing, the district court in summary judgment proceedings ordered her reinstated, reserving the issue of damages for trial.

The only issue presented on this appeal is whether the $9,100 reduction, ordered as a mitigating offset from recovery of the full amount of compensation promised plaintiff under her continuing contract, is supported by adequate evidence and is consistent with a proper application of the rule of avoidable consequences.

■ It is the well-settled law in this state and elsewhere that in employment contract cases an employer is entitled to a reduction in the amount of the recoverable wage loss of a wrongfully discharged employee if the evidence establishes that the employee made no reasonable effort to seek or accept similar employment. 5B Dunnell, Dig. (3 ed.) § 2532 and cases cited; Annotation, 17 A.L.R.2d 968.

1. 20 U.S.C.A. § 236 et seq.

2. No issue as to the legality of this arrangement was raised at trial or on this appeal, and both parties insist that this issue in no way influenced the decision below. Plaintiff's con-

tractual salary from defendant was based on her attained grade and length of service as a public elementary teacher and was not affected by the Federal funding.

In *Zeller v. Prior Lake Public Schools,* 259 Minn. 487, 108 N.W.2d 602, 89 A.L.R.2d 1012 (1961), we considered a closely analogous factual situation. There, as here, the plaintiff had been wrongfully terminated as a school teacher without notice and a hearing in violation of Minn.St.1957, § 130.18, subd. 3 (now Minn.St. 125.12, subd. 4). In affirming the trial court's award of damages as specified by the continuing contract, we held that once a wrongful discharge is proved the employee has established a prima facie case for damages measured by the salary provided by the contract, subject only to proof by the employer that the amount of damages was, or could have been, mitigated. We further noted (259 Minn. 493, 108 N.W.2d 606):

> " * * * Ordinarily, a teacher under contract wrongfully discharged need not accept employment of a different or inferior kind, or in a different locality in order to mitigate damages. * * * The measure of damages for breach of an employment contract is the compensation which an employee who has been wrongfully discharged would have received had the contract been carried out according to its terms. * * * The burden of proof to establish that such an employee could have earned or did earn compensation in mitigation of damages rests upon the party whose wrongful actions caused the breach and who claims mitigation of damages as a defense in an action based upon such breach."

The scholarly writings which discuss the rule of avoidable consequences emphasize that it is technically inaccurate to say that a wrongfully discharged employee has an affirmative legal *duty* to mitigate damages because both the employee's right of action and the remedy for the breach of contract remains the same whether he attempts to reduce his losses or not. While the employee's remedy is in no sense jeopardized, the rule operates to limit the *damages* that may be recovered when the employee makes no reasonable effort to prevent unnecessary

loss. 1 Restatement, Contracts, § 336(1), *comment d*; 5 Corbin, Contracts, § 1039; 11 Williston, Contracts (3 ed.) §§ 1353, 1358 to 1360.

In cases where the amount of salary is fixed by an employment contract, a wrongfully discharged employee's damages are measured by the salary promised under the contract. If he remains unavoidably idle, the loss of the promised salary is fully recoverable without reduction. Conversely, if a wrongfully discharged employee becomes employed in other employment similar in character and in the same locality, the loss of the promised salary is reduced by the earnings from such employment. This reduction is consistent with the objective underlying the rule of damages for breach of contract which seeks to restore the party harmed by the breach to as good but no better position than he would have been in had the contract been fully performed. 5 Corbin, Contracts, § 1039. It should be emphasized, however, that before a wrongfully discharged employee's damages may be reduced by wages earned from other employment, there must be proof that such other employment was incompatible with his obligations under the contract breached by his employer. *Spurck v. Civil Service Board,* 231 Minn. 183, 42 N.W.2d 720 (1950).[3]

When a wrongfully discharged employee fails to exert a reasonable effort to pursue or unreasonably declines to accept other employment, the rule of avoidable consequences may prevent him from recovering the full amount of the salary promised under the contract. Recognizing that, peculiar to employment contracts, the working hours of a wrongfully discharged employee are at his sole disposal, 1 Restatement, Contracts, § 336(1), sets forth the following rule:

> "Damages are not recoverable for harm that the plaintiff should have foreseen and could have avoided by reasonable ef-

---

**3.** See, also, *Wise v. Southern Pacific Co.,* 1 Cal.3d 600, 83 Cal.Rptr. 202, 463 P.2d 426 (1970); *Martin v. Board of Education,* 120 W.Va. 621, 199 S.E. 887 (1938); 22 Am.Jur.2d, Damages, § 71.

fort without undue risk, expense, or humiliation."

Ordinarily, a wrongfully discharged employee can readily foresee that, if he unreasonably declines to pursue or accept similar employment in the same locality, his damages will continue to increase. The restatement rule thus recognizes that in situations where a wrongfully discharged employee does nothing to avert unnecessary loss the increased damage is more properly charged to the employee than the employer. The burden of proof rests on the employer to establish that reasonable steps were not taken by the employee to mitigate foreseeable damages. The employer must also establish that, had other available employment been accepted, the employee could have avoided his damages in whole or in part without "undue risk [or] expense" or without suffering "humiliation" in the sense of being embarrassed, chagrined, or degraded. See, also, *Cooper v. Stronge & Warner Co.*, 111 Minn. 177, 126 N.W. 541 (1910); *Bennett v. Morton,* 46 Minn. 113, 48 N.W. 678 (1891). As should be apparent, the application of the rule of avoidable consequences depends upon the facts and circumstances of each case.

 Despite what the school district characterizes as a more than favorable decision, plaintiff argues on this appeal that there is no evidentiary support for the trial court's findings that she "did not make reasonable efforts to obtain other suitable employment" and that she "rejected * * * unreasonably" offered employment as a full-time teacher at St. Mary's. Plaintiff further argues that as a matter of law she should not have been required to accept full-time employment at a salary of $20 per day when at the time of her discharge she was being paid a salary by the school district for her attained grade of over $31 per day for half-time teaching.

The evidence on which the trial court's findings are based consists of plaintiff's testimony on direct and cross-examination. The direct evidence of the school district offered no aid to the resolution of the issue presented at trial and on this appeal.[4] Nevertheless, there is no dispute in the record that plaintiff was offered a full-time teaching position at St. Mary's for the identical teaching responsibility she performed half time under contract with the school district. The offer was made in April 1972 and withdrawn in June 1972. She declined, citing as principal reasons her aversion to teaching full-time for a salary less than 60 percent of what she was earning half time and her fear that she would lose tenure with defendant school district if she accepted employment in a private school.[5] The court found that these reasons were insufficient to support a finding that she in fact made reasonable efforts to secure such employment during the 2½-year interval of separation. In post-trial proceedings for amended findings or a new trial, the court permitted plaintiff to submit additional oral testimony justifying her refusal to pursue or accept full-time employment at St. Mary's.[6] It is that testimony which mainly persuades us that the trial court was justified in concluding that, except for substitute teaching at defendant school district for some unspecified period, she made no

---

4. The only witness the school district called was one of its teachers who was also a member of the board of St. Mary's. He testified that the minutes of the school board meeting recorded that plaintiff was offered half-time teaching in the spring and early summer of 1972. However, that testimony was correctly stricken as hearsay and no documentary evidence was presented to overcome that exclusionary ruling. Further, the school district did not directly seek to limit recovery to a period shorter than 2½ years on the ground of unreasonable delay in bringing suit for reinstatement.

5. Such fear of losing tenure rights was correctly viewed by the trial court as unjustified upon findings that she made little effort to ascertain those rights following termination. Moreover, we have previously held that a wrongfully discharged teacher does not lose any contractual rights by seeking to mitigate damages. *Stevens v. School Board of Ind. Dist. No. 271,* 296 Minn. 413, 208 N.W.2d 866 (1973).

6. Although the school district's objection to the procedure was overruled, the court allowed the district an opportunity to present its own additional evidence. No such evidence was offered.

effort from the beginning of the 1972 school year until her reinstatement to seek suitable employment at St. Mary's or elsewhere. This, as the trial court reasoned, amounted to either an abandonment of "her teaching career" for family or health reasons or efforts that were "lackadaisical at best." We thus conclude that, despite the reduced offer to pay from St. Mary's, there is sufficient evidentiary support for the court's finding that she failed to exert reasonable efforts to pursue or accept other suitable employment in the same locality within the contemplation of the rule of avoidable consequences.

This leaves the question of whether the findings supporting the amount of the reduction are clearly erroneous. Plaintiff's only testimony about the salary paid an elementary teacher at St. Mary's was in the form of an estimate of either $19 or $20 a day. Using the $20-per-day figure, the court found that plaintiff could have earned $9,100 during her 2½-year period of unemployment and accordingly reduced the amount of money she would have earned had her contract not been breached ($17,-401.48) by that amount. We believe that this reduction was erroneous because at least one-half of what she could have earned at St. Mary's was compatible with teaching half time for the school district. As we previously observed, only earnings from employment which is incompatible with the employee's contractual obligations may be offset as mitigated damages. Thus, the maximum amount that the court could have deducted because of plaintiff's failure to accept the teaching position at St. Mary's was $4,550. The trial court also failed, in our opinion, to take into account $1,755.66 in wages actually earned by plaintiff from the school district as a substitute teacher following the breach of her continuing contract.[7]

We are therefore compelled to order a modification of the reduction found by the trial court as follows: (1) To reduce the amount of the offset ordered by half or $4,550, representing what plaintiff could have earned for half-time employment at St. Mary's computed at the rate of $20 a day; and (2) to add to that offset $1,755.66, representing plaintiff's earnings from the school district for substitute teaching during the interval of her separation. The effect of this modification is to increase plaintiff's total damages from $8,301.48 to $11,095.82. While we might well remand the issue of the amount of the reduction for a retrial or grant the additur indicated, subject to plaintiff's option to reject it and retry the issue, we are persuaded that the interests of the parties appear to be best served by final settlement of the matter. Having studied the evidence in detail, we believe that all the facts available to the parties may well have been presented and are, in any event, sufficient to make as good an approximation as can be accomplished under the circumstances. Accordingly, we remand with directions to modify the judgment for plaintiff from $8,301.48 to $11,095.82.

Remanded with directions.

---

7. The court's refusal to offset the $900 plaintiff earned weekends and evenings from Mankato State College during her separation was justi-fied since this employment was compatible with her contractual obligation to the school district.