850 F.2d 350
 12 Fed.R.Serv.3d 352
 Coletta SAYRE, Personal Representative of the Estate of
Grover C. Sayre, Jr., Appellee,
v.
The MUSICLAND GROUP, INC., A SUBSIDIARY OF AMERICAN CAN CO.,
a New Jersey Corp., Appellant,
American Can Company, a New Jersey Corp.
 No. 87-5174.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Feb. 8, 1988.
Decided June 21, 1988.
Rehearing and Rehearing En Banc Denied Aug. 10, 1988.
 
 Jon P. Parrington, Minneapolis, Minn., for appellant.
 Kyle E. Hart, St. Paul, Minn., for appellee.
 Before HEANEY and BOWMAN, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.*
 BOWMAN, Circuit Judge.
 
 
 1
 Defendant, The Musicland Group, Inc. (formerly known as Pickwick International, Inc., and hereinafter referred to as Pickwick), appeals the final judgment entered by the District Court[1] upon a jury verdict finding Pickwick liable for breach of an employment contract. Pickwick does not challenge the jury's finding of liability in favor of the plaintiff--appellee Colletta Sayre, suing as personal representative for the estate of her husband, Grover C. Sayre, Jr.--but demands a new trial on damages. Pickwick argues that the trial court committed prejudicial error by (1) refusing to instruct the jury on mitigation of damages, and (2) refusing to deduct certain life insurance proceeds from the jury's award. We affirm.
 
 
 2
 Mr. Sayre was a senior vice president of real estate for Pickwick in Minneapolis from 1956 to 1981. When he was fired on November 13, 1981, his annual salary was $66,000. Pickwick discharged Sayre for an alleged conflict of interest after learning that he had started a running-shoe store business on the side in early 1981. After the termination of his employment with Pickwick, Sayre worked full time as president and general manager of his fledgling business, Advantage Athletics, paying himself $20,000 a year. The fifty-two-year-old Sayre did not try to find a replacement job similar to his executive position at Pickwick.
 
 
 3
 In March 1982 Sayre filed a complaint against Pickwick in federal district court, alleging, inter alia, age discrimination under 29 U.S.C. Sec. 623(a) and a pendent state law claim for breach of contract. Pickwick's answer did not allege that Sayre had failed to mitigate his damages. Pickwick deposed Sayre in October 1982. Several pages of the 350-page deposition included specific questions about Sayre's decision not to seek replacement employment similar to the executive position he had held for twenty-five years. After the deposition, Pickwick filed an amended answer, which also failed to raise the mitigation issue. Then, in early 1984, Sayre underwent surgery and learned that he did not have long to live. His counsel obtained an order allowing Sayre's trial testimony to be taken by videotaped deposition in August 1984. During this trial deposition, counsel for Pickwick and Sayre asked several questions about the availability of other executive employment opportunities in the Twin Cities area, and about Sayre's decision not to apply for them before turning his attention full time to Advantage Athletics. Sayre was in a frail condition during the deposition; he died five months later.
 
 
 4
 In February 1986, a mini-jury trial was held before a federal magistrate. Pickwick offered and the magistrate gave a jury instruction on mitigation of damages. The jury found that Pickwick had wrongfully terminated Sayre, but set damages at zero because they found that Sayre had failed to mitigate damages. In March 1986 counsel for plaintiff served on Pickwick a proposed mitigation of damages instruction slightly different from the instruction offered by Pickwick at the mini-trial. In the meantime, the District Court set the trial for November 10, 1986. On November 7 plaintiff served on Pickwick a motion in limine to exclude from the trial all evidence on the issue of mitigation of damages. The parties briefed the issue, and the trial judge decided that while he would allow Pickwick (over plaintiff's objection) to present evidence and argue that Sayre had failed to mitigate damages, he would not instruct the jury on the mitigation issue. The trial judge ruled that Pickwick had waived the right to a mitigation instruction by neglecting to plead failure to mitigate damages as an affirmative defense under Fed.R.Civ.P. 8(c). On the third day of trial, Pickwick moved under Fed.R.Civ.P. 15(b) to amend its answer to include failure to mitigate damages. The judge rejected Pickwick's motion, ruling that plaintiff would be substantially prejudiced by the new matter, especially since Mr. Sayre was no longer alive to assist with rebuttal evidence. After a three-week trial, the jury rejected plaintiff's age discrimination claim, but found Pickwick liable for breach of contract, and awarded Sayre's estate $288,750.
 
 
 5
 In its principal claim on appeal, Pickwick alleges that the trial judge committed prejudicial error by denying its requested instruction on mitigation of damages. Pickwick attacks the court's rationale for refusing the instruction, asserting that failure to mitigate damages is not an affirmative defense in this case. We disagree.
 
 
 6
 Federal courts considering non-federal questions (in diversity actions, or, as here, when a state claim is heard under pendent jurisdiction) apply federal rules of procedure, and follow state law to resolve issues of substance. See Erie R.R. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); Bank of St. Louis v. Morrissey, 597 F.2d 1131, 1134-35 (8th Cir.1979); 1A Moore's Federal Practice p 0.305, at 3050-51 (1987). The pleading of affirmative defenses is a procedural matter.[2] Indeed, Fed.R.Civ.P. 8(c) is entitled "Affirmative Defenses." It states:
 
 
 7
 In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.
 
 
 8
 Fed.R.Civ.P. 8(c) (emphasis added).
 
 
 9
 Failure to mitigate damages is not among the nineteen affirmative defenses enumerated in the non-exhaustive list in Rule 8(c). However, mitigation issues are usually regarded as affirmative defenses under the catchall clause "and any other matter constituting an avoidance or affirmative defense." For example, "[t]he general authority, and in fact the almost universal weight of authority, is that the burden of pleading and proving mitigation of damages in an employee's action for breach of an employment contract is upon defendant employer." 5 C. Wright & A. Miller, Federal Practice & Procedure Sec. 1273, at 322 n. 84 (1969) [hereinafter Wright & Miller] (citing dicta from Stinson v. Edgemoor Iron Works, 53 F.Supp. 864, 868 (D.C.Del.1944)). See also 2A Moore's Federal Practice p 8.27, at 8-197 n. 3 (1987); 28 U.S.C.A. Rule 8, at 309 n. 38b (West Supp.1988). But see 11 Am.Jur. Proof of Facts 2d 679, 695 Sec. 18 (1976) ("Probably a majority of courts have held that [mitigation after wrongful discharge] is an affirmative defense ... although a significant number of cases have held that the plaintiff's having obtained other employment or his failure to mitigate damages by doing so may be shown under the employer's general denial...."); 25 C.J.S. Damages Sec. 142, at 1225 (1966) (same).
 
 
 10
 A case decided by this Court, American Surety Co. of New York v. Franciscus, 127 F.2d 810 (8th Cir.1942), illustrates the long-established majority view that failure to mitigate is an affirmative defense. A defendant surety company contended on appeal that the plaintiff's recovery should be reduced because plaintiff had not mitigated his damages arising from the breach of a mechanic's lien bond. We rejected this argument, holding that "before the [defendant] could invoke the [mitigation] rule, the burden rested upon it to plead and prove the facts necessary to support the inference that the [plaintiff] was 'unreasonable' in neglecting to minimize the damages...." Id. at 816. See Ingraham v. United States, 808 F.2d 1075, 1078 (5th Cir.1987) ("In the years since the adoption of [Rule 8(c) ], the residuary clause has provided the authority for a substantial number of additional defenses which must be timely and affirmatively pleaded. These include ... failure to mitigate damages...."). See also 999 v. C.I.T. Corp., 776 F.2d 866, 870 n. 2 (9th Cir.1985); TCP Indus. v. Uniroyal, Inc., 661 F.2d 542, 550 (6th Cir.1981); Camalier & Buckley-Madison, Inc. v. Madison Hotel, 513 F.2d 407, 419-20 n. 92 (D.C.Cir.1975); White v. Bloomberg, 501 F.2d 1379, 1382 (4th Cir.1974); Consolidated Mortgage & Fin. Corp. v. Landrieu, 493 F.Supp. 1284, 1293 (D.D.C.1980).
 
 
 11
 Federal courts typically consider state court decisions on burdens of pleading or proof before concluding that mitigation is an affirmative defense. See 999, TCP, American Sur., supra. See also Seal v. Industrial Elec., 362 F.2d 788, 789 (5th Cir.1966) ("Whether a particular matter is to be regarded as an affirmative defense is to be determined by state law."). Reference to state law can be helpful, but it is certainly not required when a federal court decides a purely procedural question. 5 Wright & Miller, supra, Sec. 1271, at 304-05 ("State statutes and decisions often are utilized in deciding when certain defensive matters should be pleaded affirmatively. These are not binding on the federal courts but occasionally provide useful analogies.") (footnote omitted). See also id. Sec. 1272, at 320-21.[3]
 
 
 12
 In light of the purpose of the Federal Rules of Civil Procedure to provide uniform guidelines for all federal procedural matters, such as the pleading of affirmative defenses, we discern no principled reason for basing the federal procedural decision before us on state law. Since the overwhelming majority of federal courts have decided, for whatever reasons, that failure to mitigate damages is an affirmative defense under the catchall clause of Rule 8(c), we would thwart the purpose of the federal rules if we were to hold otherwise. Pickwick does not cite a single case in which a federal court has held that failure to mitigate damages is not an affirmative defense. This defense is routinely pleaded affirmatively in federal court, see, e.g., Anastasio v. Schering Corp., 838 F.2d 701, 707 (3d Cir.1988); Nationwide Engineering & Control Systems v. Thomas, 837 F.2d 345, 346 (8th Cir.1988), and in the instant case, we hold, as did the District Court, that failure to mitigate damages is an affirmative defense under Rule 8(c). As with other affirmative defenses, failure to plead mitigation of damages as an affirmative defense results in a waiver of that defense and its exclusion from the case. See, e.g., Camalier & Buckley-Madison, Inc., 513 F.2d at 420 n. 92.
 
 
 13
 Pickwick argues that federal courts are required to follow state procedural law to decide whether a particular defense falls within the catchall clause of Rule 8(c), and, further, that failure to mitigate damages is not an affirmative defense under Minnesota law. These assertions fail for two reasons. First, state law may be informative, but it is not binding. Second, even if federal courts were bound by state determinations, which we believe they are not, Minnesota's rulings on pleading mitigation do not contradict the majority rule.
 
 
 14
 If a federal court chooses to consider state law when interpreting a federal rule of procedure, it typically looks to the substantive rules governing burdens of proof. See Sundstrand Corp. v. Standard Kollsman Indus., 488 F.2d 807, 813 (7th Cir.1973). See also 2A Moore's Federal Practice p 8.27, at 8-176 (1987). In Minnesota, as in nearly every other jurisdiction, the defendant has the burden of proving that the plaintiff failed to mitigate his damages, see, e.g., Soules v. Independent School Dist. No. 518, 258 N.W.2d 103, 107 (Minn.1977), so it is logical to assume that under Minnesota law the defendant likewise has the burden of pleading this defense affirmatively.
 
 
 15
 Pickwick cites one case, Hartwig v. Loyal Order of Moose, 253 Minn. 347, 91 N.W.2d 794 (1958), for the proposition that failure to mitigate damages is not an affirmative defense in Minnesota. Hartwig, however, is not on point. It involved a tort claim under the state Civil Damages Act arising out of a drunk driving accident, where the defendant neglected to plead that the plaintiff already had recovered a specific sum of money under the state Wrongful Death Act. Because the plaintiff failed to object to the introduction of evidence of the prior collateral recovery, it appears that the mitigation issue was tried by consent. See id. 91 N.W.2d at 804. Most importantly, the mitigation issue in Hartwig is completely different from the one before us. See 1 Pirsig, Minn. Pleading (4th ed.) Sec. 1387 (cited in Hartwig, 91 N.W.2d at 803).[4] In the context of its discussion of the prior collateral recovery, the Hartwig court's comment that "matter in mitigation of damages" need not be pleaded affirmatively, id. 91 N.W.2d at 803, does not appear to disturb three turn-of-the-century decisions of the Minnesota Supreme Court expressly holding that mitigation of damages is an affirmative defense in a breach of employment contract case. See Beissel v. Vermillion Farmers' Elevator Co., 102 Minn. 229, 232, 113 N.W. 575, 576 (1907); Bennett v. Morton, 46 Minn. 113, 114, 48 N.W. 678, 679 (1891); Horn v. Western Land Ass'n, 22 Minn. 233, 237 (1875). These three cases at least strongly suggest, if they do not conclusively establish, that the Minnesota rule is consistent with the rule that we, and most other federal courts, have adopted, requiring failure to mitigate damages to be pleaded as an affirmative defense.
 
 
 16
 Pickwick also argues that only defenses that bar recovery, rather than those that diminish the amount of damages, need be affirmatively pleaded. This assertion is unsound. For example, it is generally recognized that "partial payment" must be pleaded affirmatively (although only "payment" is an enumerated affirmative defense under Rule 8(c)). See A.D.E. Inc. v. Louis Joliet Bank & Trust Co., 742 F.2d 395, 397 (7th Cir.1984) ("there are partial as well as complete [affirmative] defenses (e.g., failure to mitigate damages ...)"). See also 5 Wright & Miller, supra, Sec. 1273, at 322 ("The obligation to plead affirmative defenses is not limited to complete defenses.").
 
 
 17
 In the alternative, Pickwick claims that the trial court should have granted its motion to amend its answer under Fed.R.Civ.P. 15(b). While the federal pleading requirements are to be liberally construed, the trial judge has great discretion to deny motions to amend the pleadings. See Asay v. Hallmark Cards, Inc., 594 F.2d 692, 695 (8th Cir.1979) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). The trial court did not abuse its discretion in denying Pickwick's motion to amend the pleadings. The judge found that plaintiff could suffer substantial prejudice if forced to rebut the employer's allegations without the assistance of the deceased Sayre. See Fed.R.Civ.P. 15(b) (amendment allowed only if the party opposing the motion "fails to satisfy the court that the admission of such evidence would prejudice" him). Pickwick insists that plaintiff could not have been prejudiced by the mitigation issue because the topic had been raised during the two depositions, and again during the minitrial. However, the two depositions only touched briefly on the mitigation issue and did not explore it fully, and Mr. Sayre had died before the mini-trial in which Pickwick explicitly stated for the first time that mitigation was an issue in the case.
 
 
 18
 We also reject Pickwick's assertion that the mitigation issue was tried by consent, and thus should be "treated in all respects as if [it] had been raised in the pleadings." Fed.R.Civ.P. 15(b). This argument erroneously assumes that Sayre's counsel consented to the trial of the mitigation issue when he decided not to object to trial deposition questions concerning other employment opportunities, and when he asked related questions on re-direct. Federal Rule of Civil Procedure 32(d)(3)(A) states that a party generally does not waive his objections "to the competency, relevancy, or materiality of [trial deposition] testimony" by not objecting to questions during a deposition. The District Court did not err in ruling that the mitigation issue was not tried by consent, particularly in light of plaintiff's motion in limine to exclude the issue.
 
 
 19
 The preceding discussion fully disposes of Pickwick's contentions regarding the mitigation issue. Going beyond what is necessary for our decision, we note that Pickwick has not cited a single case from Minnesota or elsewhere holding that a wrongfully discharged employee cannot fulfill his duty to mitigate damages by going into full-time business for himself. Although we have found some authority suggesting that a wrongfully discharged employee should seek to replace his job with similar employment before starting his own business, see 5 A. Corbin on Contracts Sec. 1095, at 518 (1964); 11 Am.Jur.Proof of Facts 2d 679, 691 Sec. 13 (1976), the burden of proof on the issue of other available jobs is always on the defendant employer. The evidence introduced by Pickwick at trial does little to convince us that other similar executive opportunities were available to a fifty-two-year-old man who had just been terminated from his senior vice president position for running a personal business on the side. In any event, the District Court gave Pickwick more than it was entitled to by allowing defense counsel to introduce evidence and present arguments on the mitigation issue during the trial. We hold that the District Court properly denied Pickwick's mitigation instruction.
 
 
 20
 In its second issue on appeal, Pickwick contends that the trial court erroneously refused to deduct from Sayre's award the proceeds of a life insurance policy he obtained through Advantage Athletics. Advantage Athletics was required by a Minnesota bank to take out the policy on Sayre in order to secure a loan for the business. The bank was designated as co-beneficiary of the policy. The record is unclear as to the exact date of these arrangements, but Pickwick has offered no evidence that Sayre obtained the policy after he was fired. In any event, it appears that the life insurance policy was unrelated to Sayre's employment status at Pickwick: either he had obtained it before he was fired, or he would have obtained it even if he had not been fired, since he had started Advantage Athletics half a year before his discharge. Thus, the insurance was not an additional asset Sayre acquired because of his wrongful termination by Pickwick. We agree with the trial judge that the insurance proceeds at issue had "absolutely nothing to do with damages of this case one way or the other," Sayre v. Pickwick Int'l, Inc., 3-83-1248, Transcript of Trial at 1138 (D.Minn. Nov. 25, 1986), and we hold that the court did not err in refusing to make the deduction requested by Pickwick.
 
 
 21
 The judgment of the District Court is affirmed.
 
 
 
 *
 The HONORABLE THOMAS E. FAIRCHILD, Senior United States Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota
 
 
 [2]
 Pickwick argues that its ability to assert the defense of failure to mitigate damages is not merely a question of procedure, but a "matter of great substance." Brief of Appellant, at 33. However, "[t]he cardinal purpose of Congress in authorizing the development of a uniform and consistent system of rules governing federal practice and procedure suggests that Rules which incidentally affect litigants' substantive rights do not violate [the Rules Enabling Act] if reasonably necessary to maintain the integrity of that system of rules." Burlington N.R.R. v. Woods, 480 U.S. 1, 107 S.Ct. 967, 970, 94 L.Ed.2d 1 (1987)
 
 
 [3]
 In a case involving issues of proof, not issues of pleading, a panel of this Court noted: "If a matter is an affirmative defense under state law, it will be treated as such in a diversity action in a federal court of that state. 5 C. Wright & A. Miller, Federal Practice & Procedure Sec. 1272 at 317 (1969)." Bartak v. Bell-Galyardt & Wells, Inc., 629 F.2d 523, 527 (8th Cir.1980). This statement is dictum, an observation rather than a prescription, and our opinion today is not at odds with the holding of Bartak or with the full text of the Wright and Miller section cited in that case
 
 
 [4]
 Section 1387 of Pirsig on Minnesota Pleading states that "matter in mitigation" need not be pleaded affirmatively. The author then provides two examples of such matter, i.e., good faith in an action for conversion, and bad reputation in an action for libel or slander. However, the section concludes with the following caveat: "Failure of the plaintiff to mitigate the damages sustained has been held to be matter to be affirmatively pleaded by the defendant...." 1 Pirsig, Minn. Pleading Sec. 1387. Although Pickwick cites section 1387, it ignores the last sentence when it erroneously argues that "failure to mitigate" is obviously "matter in mitigation," and thus is not an affirmative defense in Minnesota