# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3059
_____

In re: Mary Jo Hixon,

                Debtor.

_____

Fred Charles Moon, Chapter 7
Trustee,

              Appellee,

      v.

Mark R. Anderson,

            Appellant,

Mary Jo Hixon.

       \*
       \*
       \*
       \*
       \*
       \*
       \*
       \* Appeal from the United States
       \* Bankruptcy Appellate Panel
       \* for the Eighth Circuit.
       \*
       \*
       \*
       \*
       \*
       \*
       \*

_____

Submitted: January 12, 2004
Filed: November 2, 2004
_____

Before WOLLMAN, RICHARD S. ARNOLD,[1] and MORRIS SHEPPARD
    ARNOLD, Circuit Judges.
_____

_____

[1]The Honorable Richard S. Arnold died on September 23, 2004. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

WOLLMAN, Circuit Judge.

Mark R. Anderson appeals from the decision of the Bankruptcy Appellate Panel for the Eighth Circuit affirming the bankruptcy court's[2] ruling that the Chapter 7 trustee of the Mary Jo Hixon bankruptcy estate may avoid, as a fraudulent transfer, a purchase of annuities by Hixon in the name of Anderson made prior to the filing of Hixon's bankruptcy petition. Moon v. Anderson (In re Hixon), 295 B.R. 866, 868 (B.A.P. 8th Cir. 2003). We affirm.[3]

## I.

Mark R. Anderson is the legal nephew of Mary Jo Hixon, the debtor in this case. In 1993, shortly after his conviction and incarceration on federal drug charges, Anderson retained Attorney Larry Bratvold to represent him in child support collection proceedings brought by Anderson's former spouse. As a result of those proceedings, Anderson was faced with multiple liens and levies against his real estate assets.

Unable to conduct his business affairs from prison, Anderson asked Bratvold to draft an instrument under which Hixon would be able to conduct any business for

---

[2]The Honorable Arthur B. Federman, United States Bankruptcy Judge for the Western District of Missouri.

[3]Anderson's claims on appeal seem to concern only the order of judgment entered by the bankruptcy court. To the extent that Anderson's claims are also directed at the bankruptcy court's denial of Anderson's post-hearing motion for new trial or to alter or amend the judgment, we affirm that decision of the bankruptcy court as well. Anderson's arguments in his motion consisted of his breach of fiduciary duty and equitable claims, and the analysis above suffices to show that the bankruptcy court's denial of a motion for new trial or to alter or amend its judgment based on those grounds does not constitute reversible error under the even more deferential "clear abuse of discretion" standard applied to such denials. See Wayzata Bank & Trust Co. v. A & B Farms, 855 F.2d 590, 595 (8th Cir. 1988).

Anderson while Anderson was incarcerated. Bratvold then drafted the Mark R. Anderson Trust ("Anderson Trust"), a revocable living trust into which certain of Anderson's assets were transferred, in addition to a durable power of attorney appointing Hixon as Anderson's attorney in fact and giving Hixon full control over Anderson's financial affairs. Among the assets conveyed to the Anderson Trust were two properties in Springfield, Missouri: one on Boonville Avenue ("Boonville Property"), and one on Lombard Street ("Lombard Property"). Both properties were conveyed to the Anderson Trust on September 12, 1993.

The goals of the Anderson Trust were to pay Anderson's child support obligations and to give Hixon "the fullest measure of ability to handle [Anderson's] affairs" short of a transfer of the trust property to Hixon. In order to accomplish this, the Anderson Trust documents named both Anderson and Hixon as co-trustees and authorized either co-trustee to act independently of the other. The Anderson Trust also allowed either co-trustee to sell, transfer, or otherwise dispose of the trust property, so long as such action was determined by that trustee in its sole and absolute discretion to be in the best interests of the trust's beneficiaries. Appellant's Ex. 1 at App. One, Sections 1 and 3(v).

In 1997, while Anderson was incarcerated or otherwise unavailable, Hixon and Attorney Bratvold created the Mary Jo Hixon Revocable Trust ("Hixon Trust") in order to "create another layer" between Anderson and certain pieces of property then contained in the Anderson Trust. Although the trust documents identify the Hixon Trust as being "for the benefit of Mark R. Anderson and his descendants only," Trustee's App. of Ex., Ex. B at 2-1, the Hixon Trust treats Hixon as the lifetime beneficiary in all respects. For instance, Hixon is given the absolute right to add or remove property and to revoke or amend the trust. Id. at 4-1. The Hixon Trust also names Hixon as its sole trustee, thereby restricting any exercise of power over the trust to Hixon herself. Id. at 1-1. Further, in the event of Hixon's incapacity, any successor trustee is directed to provide solely for Hixon and her obligations during

her lifetime.  Id. at 4-2.  Only upon Hixon's death do Anderson or his descendants become beneficiaries of the Hixon Trust.  Id. at 8-1.

The impetus for the Hixon Trust was a concern on the part of Attorney Bratvold and Hixon that a potential judgment lien creditor would attempt to interfere with the sale of the Boonville Property.  Anderson himself specifically stated that his former spouse would frequently attempt to attach and levy on the Boonville Property whenever Anderson fell into arrears on his child support obligations.   To prevent such an attachment, Hixon (as co-trustee of the Anderson Trust) conveyed the Boonville Property to the Hixon Trust on April 21, 1997.  Anderson (as co-trustee of the Anderson Trust) subsequently conveyed the Lombard Property into the Hixon Trust on May 27, 1997.  Anderson indicated at trial that he was aware of the transfer of the Boonville Property into the Hixon Trust, condoned the transfer, and agreed with its purpose.  Anderson also stated that he did not care which name the property at issue was listed under so long as he and his descendants received the proceeds of the property.

In addition, Hixon later represented on a credit application that she was the owner of the real estate in the Hixon Trust and drafted checks out of the Hixon Trust account for her own personal expenses.  Checks for Anderson's expenses continued to be written out of the Anderson Trust.

The Boonville Property was subsequently sold to Dan and Theresa Hicks on December 14, 1998, for a $5,000 down payment and a $60,000 promissory note.  Hixon served as the sole grantor of the Boonville Property in her capacity as trustee of the Hixon Trust, and the promissory note and deed of trust were executed in favor of Hixon as trustee.  Shortly after the sale, Hixon claimed the promissory note as a personal asset.

On August 21, 2001, Dan and Theresa Hicks refinanced their debt and paid the remaining balance due on the promissory note (more than $40,000) on the Boonville Property. Payment was made to Hixon, who then used the proceeds to purchase four $10,000 annuities on August 27, 2001. Anderson was named as the owner of each annuity, and Hixon was named as the annuitant. Hixon was insolvent as of the purchase date of the annuities, and no consideration was given to Hixon in return for the purchase of the annuities in Anderson's name.

Hixon filed for Chapter 7 Bankruptcy on November 29, 2001, and Fred C. Moon ("Trustee") was appointed trustee of Hixon's bankruptcy estate. The Trustee subsequently brought an adversary proceeding seeking avoidance of the purchase of the annuities on the ground that the purchase of the annuities in Anderson's name constituted a fraudulent conveyance as defined in 11 U.S.C. § 548. The bankruptcy court found that the Boonville Property, the promissory note, and the proceeds of the promissory note (used to purchase the annuities) were Hixon's property. Because the annuities were purchased at a time when Hixon was insolvent, because Hixon did not receive reasonably equivalent value for the purchase of the annuities, and because the purchase took place within one year of Hixon's bankruptcy petition, the bankruptcy court agreed with the Trustee, deemed the purchase a fraudulent conveyance, and entered judgment in favor of the Trustee and against Anderson in the amount of $40,000. Anderson's post-hearing motion for new trial or to alter or amend the judgment was denied by the bankruptcy court. On appeal, the bankruptcy appellate panel affirmed the bankruptcy court's judgment.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d). We apply the same standard of review utilized by the bankruptcy appellate panel and review the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*. Drewes v. Vote (In re Vote), 276 F.3d 1024, 1026 (8th Cir. 2002). The Trustee argues that the bankruptcy court correctly found that the promissory note and

its proceeds were Hixon's property at the time the annuities were purchased, entitling the Trustee to avoid the purchase as a fraudulent conveyance. Anderson, however, contends that Hixon never owned the property.

We find no clear error in the bankruptcy court's determination that the Boonville Property became Hixon's property when it was transferred into the Hixon Trust. Although the evidence presented in the record could be susceptible to differing interpretations, we may not hold that the bankruptcy court's chosen interpretation is clearly erroneous where there is more than one permissible view of the evidence. Ramsay v. Dowden (In re Cent. Ark. Broad. Co.), 68 F.3d 213, 215 (8th Cir. 1995) (per curiam). In addition, even greater deference to the bankruptcy court's factual findings is necessary where, as here, the findings call for an assessment of witness credibility and where the record contains no contradictory documents or objective evidence. Id. In this case, ample evidence exists in the record to support the bankruptcy court's findings. Accordingly, because Hixon, while insolvent, transferred an interest in property within the one-year period before her bankruptcy petition and received no reasonably equivalent value in return, the Trustee may avoid the purchase as a fraudulent conveyance. 11 U.S.C. § 548(a).

## III.

Anderson alternatively claims that even if the Boonville Property, the accompanying promissory note, and the annuities became Hixon's property, Hixon breached a fiduciary duty when she transferred the Boonville Property to the Hixon Trust. Anderson therefore claims that he is entitled to equitable relief in the form of a resulting or constructive trust imposed upon the proceeds of the sale of the Boonville Property. Because Anderson's claims concern the nature and extent of his interest in the Boonville Property, they must be evaluated under state law. O'Neal v. S.W. Mo. Bank of Carthage (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997). Here, because all relevant events occurred in Missouri, the law of

that state governs.  Id.  A lower court's determinations of state law are reviewed *de novo*.  Id.

**A.**

Anderson's claims of breach of fiduciary duty and of entitlement to equitable relief were not raised in his initial answer and instead first arose in his post-hearing motion for a new trial or to alter or amend the bankruptcy court's judgment. Although neither breach of fiduciary duty nor constructive or resulting trust is enumerated as an affirmative defense that must be raised in an answer pursuant to Fed. R. Civ. P. 8(c) (applicable to bankruptcy proceedings through Fed. R. Bankr. P. 7008(a)), both claims seem to constitute "an avoidance" of the Trustee's action and therefore qualify as affirmative defenses under the Rule's "catch-all" clause.  See Fed. R. Civ. P. 8(c).  See also Sayre v. Musicland Group, Inc., 850 F.2d 350, 353 (8th Cir. 1988).  As a result, both claims are most likely waived because they were not asserted in Anderson's answer and were not the subject of a motion to amend the pleadings to conform to any evidence presented at trial.  Sayre, 850 F.2d at 354.  Passing the question of waiver, we conclude that Anderson's late-raised claims for relief are without merit.

Anderson first asserts that, assuming that the Boonville Property became the property of Hixon, the underlying transfer from the Anderson Trust to the Hixon Trust amounted to a breach of fiduciary duty.  Because the Boonville Property was the property of the Anderson Trust itself and not Anderson's personal property, see Trustee's Ex. A at 3-1, Hixon was acting in her capacity as co-trustee of the Anderson Trust when she transferred the Boonville Property into the Hixon Trust.  Accordingly, any claim that Hixon breached a fiduciary duty must be evaluated in accordance with the powers granted to Hixon under the terms of the Anderson Trust, as well as any responsibilities imposed by Missouri trust law, rather than in accordance with Missouri's rules pertaining to durable powers of attorney or with Hixon's powers and duties as Anderson's attorney in fact.  See Kohm v. Kohm (In re Estate of Davis), 954

S.W.2d 374, 381 (Mo. Ct. App. 1997) (where a party does no relevant act under a power of attorney, he has breached no duty imposed on attorneys in fact who act under powers of attorney).

All of Hixon's actions with respect to the transfer of the Boonville Property from the Anderson Trust to the Hixon Trust were authorized under the powers granted to her as co-trustee of the Anderson Trust. Although Missouri law imposes upon a trustee the duty to act as a prudent investor with respect to trust property, Mo. Ann. Stat. § 456.520(1) (1997), the individual decisions of a trustee must be judged in accordance with the specific circumstances of the trust. Mo. Ann. Stat. § 456.902(1) (1997). Here, given the fact that Anderson was aware of Hixon's transfer of the Boonville Property, condoned it, and eventually transferred more of his own property into the Hixon Trust, as well as the fact that the aim of the conveyance was the protection of the Boonville Property, the transfer met the prudent investor standard. Furthermore, because the Hixon Trust provided for Anderson and his descendants as residuary beneficiaries, it cannot be said that Hixon's conveyance of the Boonville Property into the Hixon Trust was not in the best interests of the Anderson Trust's beneficiaries. See Mo. Ann. Stat. § 456.905 (1997); Trustee's Ex. A at 3-1.

**B.**

Anderson also claims that he is entitled to equitable relief in the form of a resulting or constructive trust imposed upon the proceeds of the sale of the Boonville Property. As an initial matter, Missouri courts have determined that the resulting trust doctrine has no application to a situation where, as here, an express trust exists. Parker v. Blakeley, 93 S.W.2d 981, 988 (Mo. 1936).

Constructive trusts are imposed under Missouri law as an equitable remedy in situations "where a party has been wrongfully deprived of some right, title, benefit or interest in property as a result of fraud or in violation of confidence or faith

reposed in another." In re Broadview Lumber, 118 F.3d at 1253 (quoting Fix v. Fix, 847 S.W.2d 762, 765 (Mo. 1993) (en banc)).  Either actual or constructive fraud may serve as a justification for the imposition of a constructive trust.  Fix, 847 S.W.2d at 765.

Here, there is no constructive fraud present to justify the imposition of a constructive trust because Hixon did not breach a fiduciary duty owed to Anderson or to the original beneficiaries of the Anderson Trust.  Id.  We therefore consider whether Anderson can show actual fraud.  In order to prove actual fraud and impose a constructive trust, Missouri courts require evidence that is so "clear, cogent and convincing as to exclude every reasonable doubt in the mind of the trial court."  Id. at 765.  Rather than providing the strong evidence of wrongful conduct required to support a finding of actual fraud, the record instead indicates that Anderson willingly gave almost complete control over the assets in his trust to Hixon and allowed her to transfer the Boonville Property into her own possession through the vehicle of the Hixon Trust.  Because Anderson allowed his trustee to convey his property to another trust in order to hinder potential judgment lien creditors, equity will leave him where it finds him.  See Cook v. Mason, 185 S.W.2d 793, 794 (Mo. 1945).

The judgment is affirmed.

_____