**James L. SNYDER, Respondent,**

v.

**CITY OF MINNEAPOLIS, Appellant.**

**No. C7–87–1394.**

Court of Appeals of Minnesota.

April 19, 1988.

Review Granted June 29, 1988.

Timothy D. Kelly, Cindy J. Larson, Minneapolis, for respondent.

Robert J. Alfton, City Atty., Jerome F. Fitzgerald, Asst. City Atty., Minneapolis, for appellant.

Thomas L. Grundhoefer, St. Paul, amicus curiae for League of Minnesota Cities.

Margaret J. Flicker, St. Paul, for Association of Minnesota Counties.

Heard, considered and decided by NORTON, P.J., and KALITOWSKI and SCHULTZ,* JJ.

## OPINION

NORTON, Judge.

Respondent James L. Snyder claims damages for the City of Minneapolis' revocation of a building permit after he had demolished his fire-damaged building. He argues the City was negligent and violated his civil rights under 42 U.S.C. § 1983. After a bench trial, the court found the City negligent and determined that the City is estopped from denying damages. The court awarded damages against the City in the amount of $795,389.67, to be reduced by $402,466.80 on the condition that the City issue Snyder a restaurant license. Judgment was entered May 19, 1987. In its amended findings, conclusions and order for judgment, which was entered July 1, 1987, the court denied Snyder's section 1983 claims. The City appeals, arguing that it has discretionary immunity from tort liability, that the damages are not supported by the evidence and that in any event, its liability is limited by Minn.Stat. § 466.04 to $200,000. Snyder has also appealed, alleging the court erred by denying his section 1983 claims. The League of

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Minnesota Cities and Association of Minnesota Counties were granted leave to file a joint amicus brief, by order of the court of appeals dated September 14, 1987.

## FACTS

In 1977 James Snyder purchased a building located at 1409 West Lake Street near the Hennepin and Lake intersection in Minneapolis. The structure was a 30 by 46 foot, two-story commercial brick building with a basement. It covered the entire lot. The first floor and basement were devoted to restaurant uses and the second floor to residential uses. The building had no off-street parking.

The original building permit was issued in 1905, before the City's zoning code was adopted. The area in which the building is located is now a B3S-3 zoning district. The City's zoning code, Mpls. Code of Ordinances § 540.1460 requires one off-street parking space for each 300 square feet of area in excess of 4,000 square feet, or a minimum of four off-street parking spaces for that district. The original structure was "grandfathered" as a conforming building even though it lacked the requisite parking spaces.

An adjacent alley was vacated in 1983, enlarging the lot from 30 feet to 36 feet wide.

In 1985 a fire caused minor damage to the building. Snyder decided it would make economic sense to raze the building if he could increase rent revenues by building a slightly larger, 36 by 46 foot structure. His plan was to repair and renovate the building if he could not get a building permit.

Willard Weikle, a contractor hired by Snyder, sought to obtain a building permit for the proposed new structure by taking a site plan to the City's zoning office, part of the Department of Inspections. Edward Virnig, a zoning office employee, told Weikle that the plan was lacking the required four off-street parking spaces. Virnig told him the Calhoun Square parking ramp might satisfy the ordinance and that he should contact the City coordinator's office. Weikle did so and forwarded to Virnig a

copy of section 4.3 of the federal Urban Development Action Grant (UDAG) agreement by which the ramp was financed. It read in part:

[D]eveloper shall maintain equal access to at least 140 parking spaces of the 450 total spaces in the ramp for the general public use by the merchants and customers of the immediate and existing Hennepin–Lake (nonshopping mall center clientele) retail area.

On June 13, 1985, Virnig stamped zoning approval on the site plan Weikle provided. His approval was based on using the parking spaces devoted to the public in the Calhoun Square ramp and Mpls. Code of Ordinances § 528.50 which permits off-site parking if the site is within 300 feet of the property, and if the parking is owned or under long term lease to the property owner, and if approved by the Board of Adjustment. Snyder's lot was located within 300 feet of the Calhoun Square ramp; however, he did not own or lease any parking in the ramp.

Snyder obtained a wrecking permit for the old building from the City on July 31, 1985. On August 8, 1985, Snyder was issued a building permit for the proposed 36 foot by 46 foot building. Weikle paid a fee and picked up the permit that day. Also on August 8, 1985 Snyder began demolition of the building. Demolition was not completed until August 14.

Sometime between August 8 and August 20, 1985, the City decided to revoke the permit after Ray Harris, the developer of Calhoun Square, called on City officials on August 8 to complain that Snyder could not use the ramp to satisfy parking requirements. The City determined that the building permit issued to Snyder for a 36 foot by 46 foot building without off-street parking was in violation of Mpls. Code of Ordinances § 540.1460, which required a minimum of four off-street parking spaces. The Department of Inspections notified Weikle by telephone that the building permit was invalid and followed that notice by a letter. Respondent was advised by the City that if he wished to build the 36 foot by 46 foot building he could apply for a

variance from the off-street parking requirement.

Respondent claims the City prepared the letter notifying Weikle of the revocation on August 8, 1985, but that the City purposely waited twelve days, until after he had demolished his building, to send the revocation letter. The City never explained to Weikle the 12–day delay. In the interim, the old structure was demolished and Weikle had begun to work on the new building. Respondent claims the old building could have been saved if he was notified of the revocation on August 8, 1985.

Respondent contacted Joan Niemiec, the Minneapolis City Council member whose district includes Lake and Hennepin. Snyder had noticed that a newspaper article indicated that a meeting of City officials was to be held the following week about his building permit. He testified that he asked Niemiec if he could attend, but was told by her that he could not attend, and that the City was going to revoke the permit.

Snyder made several attempts to obtain a variance from the Board of Adjustment and the City Council for some kind of building on the property. He could not legally construct a building without a new permit or variance. Initially he applied for a variance for a 36 by 46 building, like the one for which the permit was revoked. A business associate of Ray Harris, Robert Fine, attended the Board's October 23, 1985 hearing on the variance as a "volunteer" sixth member of the five member Board solely for the purpose of voting on Snyder's application. At the hearing, Fine stated that Snyder had supplied erroneous information to the zoning office, and the Board of Adjustment denied the application.

Snyder also filed a variance request to vary off-street parking from four spaces to zero spaces for a 30 foot by 46 foot two-story building, the same as his original building, which was denied. Several other requested variances were denied on the grounds that the parking requirements were not met, and each denial was affirmed by the City Council. His final request for a 30 by 42 foot, two-story commercial building was heard and granted on December 23, 1986.

In January, 1987, Snyder commenced construction of the new building. A restaurant tenant was willing to accept the somewhat smaller building if Snyder constructed it immediately. At the time of trial, however, the lease of the building to the new restaurant tenant was in jeopardy because the City tabled the restaurant license application until the trial was over.

In its amended findings, conclusions and order for judgment, the trial court ruled in favor of respondent for the most part, rejecting the City's defense of tort immunity for discretionary acts. The court concluded that (1) the City negligently issued the building permit, that (2) the issuance or revocation of the permit was a ministerial act, that (3) the City is estopped from denying it damaged Snyder, and that (4) Snyder was damaged in the amount of $795,389.67. The court also provided a reduction of damages by $407,466.80, should the City grant the requested restaurant license.[1] However, in its amended findings, conclusions and order, the court rejected respondent's 42 U.S.C. § 1983 due process claims.

The trial court made several findings relevant to this appeal. Regarding the City's claim of discretionary immunity, the court found:

> Virnig's approval of Snyder's site plan was not a discretionary act but was a ministerial/operational act as that term is defined by Minnesota law. The City Board of Adjustment, the City Planning Commission, and the City Council are the planning and policy making bodies of the City with respect to zoning matters. The zoning office and its personnel merely implement those planning and policy decisions. Virnig testified in deposition that he has no authority to change the requirements of the zoning code or to

---

**1.** The City later granted Snyder the restaurant license, and the judgment was reduced accordingly.

grant variances. Even leases for off-street parking have to be approved by the City's Board of Adjustment. Nordrum testified that even the smallest exception from strict zoning code requirements must be taken to the Board of Adjustment.

Further, the court found that the City's position that Snyder must own or lease parking spaces within 300 feet of his building to satisfy the parking requirements is directly contrary to the position taken by the City in 1983 when Snyder applied for a liquor license for the same premises.

The court also found that:

The law is not clear on the question of whether the 140 spaces in the Calhoun Spare ramp that are devoted to use by businesses other than Calhoun Square can be used to satisfy the parking requirements in a case like Snyder's. * * * [T]he City's alleged policy that the Calhoun Square ramp could not be used to satisfy parking requirements was an unwritten policy of which Snyder could not be expected to have knowledge. Snyder's damages were not caused by his failure to acquaint himself with the law.

The trial court found that Snyder was damaged in the amount of $795,389.67:

[B]ecause the City wrongfully granted him a building permit, then wrongfully revoked it, and subsequently refused to grant Snyder a variance for a 36 × 46 foot building.

The court based the damages on the difference between the 30 by 42 foot building authorized and the 36 by 46 foot building Snyder would have had pursuant to his building permit, plus consequential damages.

In its amended findings, conclusions and order, the court concluded that the City did not violate 42 U.S.C. § 1983. There was no accompanying memorandum explaining its decision.

## ISSUES

I. Did the trial court err by its ruling that the City zoning clerk's approval of a building permit is not a discretionary act for which the City is immune from tort liability under Minn.Stat. § 466.03, subd. 6?

II. Is the $200,000 cap on municipal tort liability required by Minn.Stat. § 466.04 an affirmative defense which is waived if not pleaded?

III. Does the evidence support the damages award?

IV. Did the trial court err in denying respondent's claim that the City violated his civil rights without due process under 42 U.S.C. § 1983?

## ANALYSIS

### I.

The trial court's finding that Virnig's approval of the building permit was not a discretionary act is sound under Minnesota law. A municipality is subject to liability for "its torts and those of its officers, employees and agents acting within the scope of their employment or duties." Minn.Stat. § 466.02 (1986). Discretionary acts of a municipality are excluded from this rule of tort liability for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused." Minn.Stat. § 466.03, subd. 6 (1986). The rationale for the discretionary acts exception is that governmental policy decisions should not be subject to judicial review through a negligence action. *Cairl v. State*, 323 N.W.2d 20, 23 (Minn.1982).

It is the decisionmaking process used by the government officer, agency, or employee which must be examined: "The crucial focus is upon the nature of the act undertaken." *Larson v. Independent School District No. 314, Braham*, 289 N.W.2d 112, 120 (Minn.1979). Decisions which are protected by discretionary immunity are those which involve planning and judgment. *See id.* Those which merely carry out a predetermined policy or plan are considered "ministerial" or "operational" and are not protected. *See id.*

The trial court properly examined the nature of the decisionmaking process and determined that the issuance of the building permit in this case was a ministe-

rial, operational level type decision and not a discretionary, planning level decision. *See Cairl,* 323 N.W.2d at 23; *Larson,* 289 N.W.2d at 120. The Minnesota Supreme Court's definition of ministerial duty was adopted from *People v. May,* 251 Ill. 54, 57, 95 N.E. 999, 1000 (1911):

> Official duty is ministerial when it is absolute, certain and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.

*Williamson v. Cain,* 310 Minn. 59, 61, 245 N.W.2d 242, 244 (1976) (quoting *Cook v. Trovatten,* 200 Minn. 221, 224, 274 N.W. 165, 167 (1937)). Ministerial duty has also been defined by the supreme court as follows:

> When the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial. Discretion is the power or right of acting officially according to what appears best and appropriate under the circumstances. It cannot be controlled.

*Silver v. City of Minneapolis,* 284 Minn. 266, 269, 170 N.W.2d 206, 208 (1969) (quoting *Romsdahl v. Town of Long Lake,* 175 Minn. 34, 36, 220 N.W. 166, 167 (1928). Ministerial decisions have also been termed "operational" decisions. *See Marlow v. City of Columbia Heights,* 284 N.W.2d 389, 392 (Minn.1979) (city's failure to maintain public boat launching site in safe condition was "operational" failure following "planning" decision to operate and maintain public landing and was not within discretionary acts exception). *See also Williamson,* 310 Minn. at 61, 245 N.W.2d at 244 (nature, quality and complexity of decisionmaking process did not entitle state to discretionary acts immunity where state employee's job to demolish a house was simple and definite). In contrast to ministerial, operational decisions, a discretionary act "involves the balancing of complex and competing factors comprising 'a discretionary choice between alternatives.'" *Cairl,* 393 N.W.2d at 24 (quoting *Larson,* 289 N.W.2d at 120).

Under this analysis, Virnig's act of issuing the permit is clearly not a discretionary one. His job was not to make judgments about zoning matters, but only to check to see if predetermined requirements were met and then stamp approval if the plans conformed to the zoning code. Virnig's official duty was simple and definite; he had no authority to make policy decisions or alter the zoning code requirements. When Virnig stamped his approval on Snyder's plans, he was merely carrying out the planning decisions expressed in the City's zoning code.

However, the City argues that the issuance of a building permit in this case was a discretionary act under a similar case, *Anderson v. City of Minneapolis,* 287 Minn. 287, 178 N.W.2d 215 (1970). In *Anderson,* the City erroneously issued a building permit to property owners. *Id.* The permit was subsequently revoked when the City determined it was not permitted under the applicable zoning ordinances. *Id.* In the interim, the property owners incurred expenses for constructing a garage, relying on the permit. *Id.* The supreme court reversed a judgment based on a jury verdict for the property owners, reasoning:

> The act of an employee of the city in issuing the building permit in a doubtful case involved an exercise of discretion in the sense that the city's employee had to make a judgment as to whether plans submitted in support of the application for the permit constituted a permissible use of the property in the area involved.

*Id.* at 288, 178 N.W.2d at 217.

The *Anderson* court further stated that:

> If the proposed use authorized by the building permit was clearly illegal, so that no element of discretion or judgment should have been exercised by the city's employee, the owner is precluded from recovering damages because he and those who act for him are charged with the knowledge of the laws regulating the granting of the permit and expense incurred is at the owner's risk, at least in so far as the city is concerned.

*Id.* at 289, 178 N.W.2d at 217.

The *Anderson* decision is troublesome in light of the particular facts of this case and

in view of more recent supreme court cases on discretionary immunity, including *Larson* and *Cairl,* which give greater definition to the meaning of discretionary acts. While the facts in *Anderson* parallel the facts of this case generally, the *Anderson* opinion does not establish the kind of factual detail of the actual decisionmaking process that the trial court here described. Thus, it is difficult to compare the two cases by comparing the decisionmaking processes as required by *Larson* and *Cairl.* If we were to follow *Anderson* solely on its facts, we would essentially be ruling that in every case involving issuance of a building permit, it is a discretionary act as a matter of law, notwithstanding the specific facts of the case. This would subvert the mandate of *Larson* and *Cairl* that the court evaluate the actual decisionmaking process in each case.

■ Additionally, the City's failure to timely notify Snyder that his permit was revoked is another negligent act. The City knew the original building was to be demolished beginning August 8, 1985 because the City issued the wrecking permit. Had the City timely notified Snyder, the building could have been saved.

## II.

Minn.Stat. § 466.04 (1986) limits municipal tort liability to $200,000. Respondent argues that the cap is an affirmative defense which was not pleaded by the City, and was thereby waived. In its answer the City did not plead the statutory cap. The City did mention in a post-trial motion that the statute limits its liability. However, it appears that the City did not bring the matter directly to the trial court's attention and the trial court did not rule on the issue.

■ We agree with the City's argument that the cap is not a defense to liability, but is merely a limitation on damages recoverable. The cap is not listed as an affirmative defense in Minnesota Rules of Civil Procedure 8.03 and appellant has not provided other authority to show it is an affirmative or other defense. The statute is a mandatory limitation on damages which was not waived by the City's failure to plead it as a defense. Although the trial court did not have the opportunity to rule on the issue, in the interest of judicial economy we impose the cap here instead of remanding the case.

The amicus brief concerns the constitutionality of the statutory cap. The issue was also not ruled on by the trial court however, and this case can be resolved by reference to state law only. We decline to address the constitutional question.

## III.

Based upon our decision that the trial court erred in failing to impose the $200,000 limit, the evidence is required to support only $200,000 in damages. Further, we will only overturn facts found by a trial court where they are "clearly erroneous." Minn.R.Civ.P. 52.01.

■ Appellant objects to the damages award, arguing that the figures should be based upon the difference between what it would have cost respondent to rebuild the fire-damaged structure ($45,000) and what the new building cost ($151,871), or $106,871. However, the measure of damages for tortious injury to property is the diminution in value resulting from the wrongful act and damages proximately flowing from the tort. Significantly, the trial court found that there were two separate negligent acts by the City—first the issuance of the permit, then its revocation. Thus, in addition to the $106,871 appellant concedes, respondent is also entitled to be compensated for the funds he futilely expended toward construction of his proposed 36 by 46 foot structure. Those include $4,334.72 for the architectural plan, $16,566 for re-excavation, $275 for the survey and $750 for the lost financing deposit. Respondent should also recover the lost rents caused by the City's wrongful revocation of the permit. The trial court found $119,232 in rent was lost from November 1, 1985, when the 36 by 46 building would have opened, to May 1, 1987, the date of trial. Appellant has not shown this finding to be clearly erroneous. The evidence is sufficient to support the damages award over the $200,000 statutory limit.

Accordingly, we order the judgment reduced to $200,000.

## IV.

Respondent has also filed a notice of review, seeking a reversal of the ruling on his 42 U.S.C. § 1983 claim that his due process rights were denied because (1) he had a protected property interest in the erroneously issued building permit, (2) he was given no notice or hearing prior to its revocation, and (3) the reasons set forth in the revocation letter were false. He claims, and the trial court found, that he could have shown the reasons for the revocation were false, had he been given notice and a hearing.

Respondent also claims he was denied substantive due process rights by the City's arbitrary, capricious and illegal denial of the building permit and denial of variance requests. Respondent makes a plausible argument that the City's actions were arbitrary and were politically motivated.

However, we decline to reach the section 1983 issue because we are not persuaded that the trial court erred in ruling that Snyder's due process rights were violated.

## DECISION

The trial court correctly concluded the City zoning clerk's issuance of the building permit in this case was not a discretionary act for which the City is immune from tort liability.

The $200,000 cap on damages mandated by Minn.Stat. § 466.04 is not an affirmative defense and was not waived by the City.

The trial court's assessment of damages are supported by the evidence, at least up to the $200,000 statutory cap. We modify the judgment to conform to the $200,000 limitation.

Respondent has not shown the trial court erred in denying respondent's section 1983 claim.

Affirmed as modified.