Heather PIRKOV–MIDDAUGH, a minor, By and Through her parent and natural guardian, Linda Middaugh, Respondents,

v.

GILLETTE CHILDREN'S HOSPITAL, Respondent,

P. Cederberg, M.D., et al., Defendants,

K. Vanden Brink, M.D., Respondent,

and

State of Minnesota, Intervenor, Petitioner, Appellant.

No. C9–91–526.

Supreme Court of Minnesota.

Feb. 19, 1993.

Hubert H. Humphrey, III, Atty.Gen., Mary Ann Bernard, Asst. Atty. Gen., St. Paul, for appellant.

John W. Carey, Steven D. Emmings, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Fairfax, for Heather Pirkov–Middaugh, et al.

David D. Alsop, Anne T. Johnson, Gislason, Dosland, Hunter & Malecki, Minnetonka, for K. Vanden Brink.

Victor E. Lund, Kenneth P. Gleason, Dawn G. Atchison, Mahoney, Dougherty & Mahoney, Minneapolis, for Gillette Children's Hosp.

Carla Heyl, St. Paul, for amicus curiae, League of MN Cities.

WAHL, Justice.

The state of Minnesota challenges the decision of the court of appeals affirming the district court holding that Gillette Children's Hospital (Gillette), a state governmental entity, waived the statutory cap on its liability to the extent of the policy limits of the procured insurance, even though that coverage is unavailable due to the bankruptcy of the insurer. The question is also raised as to the applicability of a 1992 amendment to Minn.Stat. § 3.736, subd. 8 (1982). We determine Minn.Stat. § 3.736, subd. 8 (1992) to be applicable and reverse the decision of the court of appeals.

The appeal arises out of a medical malpractice action begun by Heather Pirkov–Middaugh and her parent and natural guardian, Linda Middaugh, to recover damages resulting from surgery for a congenital hip defect done on 4–year–old Heather at Gillette Children's Hospital on July 14, 1983. The complaint alleged negligence on the part of Heather's surgeon and other physicians involved in her post-operative care in failing to prevent or detect and treat the compartment syndrome complication which led to the destruction of much of

the muscle tissue in Heather's lower right leg. Defendants were Dr. Cederberg, who did the original surgery, Dr. Schneider, Dr. Sundberg, Dr. Lutter, Gillette Children's Hospital, and Dr. Vanden Brink, the medical director of Gillette, who did remedial surgery for the compartment syndrome which had developed.

At trial, the jury found damages totalling $740,000 with pre-verdict interest of $314,-794.20. The jury allocated fault: 43% to Dr. Cederberg, 10% to Dr. Schneider, 7% to Dr. Vanden Brink, and 40% to Gillette. Drs. Sundberg and Lutter were dismissed from the case. While post-trial motions were pending, Dr. Cederberg and Dr. Schneider entered into a court-approved settlement agreement with plaintiffs for $687,081.59. The trial court aggregated Dr. Vanden Brink's fault with Gillette's fault, making Gillette's total liability $500,-453.27 as of the date of judgment.

When plaintiffs' cause of action arose in 1983, Gillette was a "public corporation" within the executive branch of the state, insured for liability by Great Global Insurance Company (Great Global) for one million dollars. If Gillette had purchased no insurance, its liability would have been capped by statute at $100,000.00. Minn. Stat. § 3.736, subd. 4 (1982). Under the provisions of Minn.Stat. § 3.736, subd. 8, however, the district court held, in a pre-trial order dated October 12, 1989, that Gillette Children's Hospital, by procuring insurance coverage, waived the statutory cap on its liability to the extent of the policy limits of coverage it procured, even though the coverage may not be available for the claims asserted in the action.

Great Global initially assumed Gillette's defense but was declared insolvent in 1986. Because of its insurer's insolvency, Minn. Stat. § 60C.09 (1986) operated to provide Gillette with $300,000.00 liability coverage through the Minnesota Insurance Guaranty Association (MIGA). Since the amount of coverage under MIGA, which had been tendered to the court, would not satisfy the entire judgment against Gillette, the state intervened, on appeal, as a party defendant to ascertain the correctness of the decision and the state's liability for the uninsured portion of the verdict. The court of appeals affirmed the decision of the trial court in its entirety, in *Pirkov–Middaugh v. Gillette Children's Hospital, et al.*, 479 N.W.2d 63 (Minn.App.1991).

The only issue appealed by the state to this court is whether the court of appeals erred in holding that Gillette waived its statutory caps on liability up to the limits of its insurance policy, even when there is no coverage under that policy because of the insolvency of the insurer.

Prior to 1992, Minn.Stat. § 3.736, subd. 8 provided:

A state agency, including any entity defined as a part of the state in section 3.732, subdivision 1, clause (1), may procure insurance against liability of the agency and its employees for damages resulting from the torts of the agency and its employees. The procurement of this insurance constitutes a waiver of the defense of governmental immunity to the extent of the liability stated in the policy but has no effect on the liability of the agency and its employees beyond the coverage so provided.

The court of appeals interpreted this language to mean that by procuring a policy of insurance for one million dollars Gillette waived its statutory caps on liability to that extent, even though there was now no coverage available under the policy. The state argues that this interpretation contravenes the actual language of subdivision 8. The plain meaning of the language "the procurement of this insurance * * * has no effect on the liability of the agency and its employees *beyond the coverage so provided*" (emphasis added) is that there is no waiver of the defense of governmental immunity where there is no insurance coverage. The state, joined by Amicus Curiae League of Minnesota Cities, argues further, that even if the language of the statute were considered ambiguous, the statute's specific legislative history and the general historical context in which the legislature acted indicate that the legislature intended Minn.Stat. § 3.736, subd. 8 to protect state and local governments from lia-

bilities not covered by the purchase of insurance. It is, as the state contends, inconceivable that a legislature which responded so quickly to this court's decision in *Nieting v. Blondell*, 306 Minn. 122, 235 N.W.2d 597 (1975), to establish monetary limits on what might otherwise be unlimited tort liability for state governmental entities, could have intended the result reached by the courts below in this case.[1] This court has recognized that the protection of the fiscal integrity and financial stability of the state is a legitimate public purpose which justifies the establishment of such limits on tort liability. *Lienhard v. State*, 431 N.W.2d 861, 867 (Minn.1988).

We need proceed with this analysis no further, however, for even though it can be argued that at the time of the court of appeals decision the language of the statute was ambiguous, the legislature reacted immediately to the decision of the court of appeals by amending section § 3.736, subd. 8 Act of April 29, 1992, ch. 513, art. 4, § 26, 1992 Minn.Laws 835, 935–36. Subdivision 8 now reads in pertinent part:

> * * * * Procurement of the insurance is a waiver of the limits of governmental liability * * * only to the extent that valid and collectible insurance, including where applicable, proceeds from the Minnesota Guarantee Fund, exceeds those limits and covers the claim. Purchase of insurance has no other effect on the liability of the agency and its employees. * * * *

Minn.Stat. § 3.736, subd. 8 (1992). The legislature stated that its intent in enacting the amendment was to "clarify, rather than to change, the original intent of the statutes amended" and that the amendment was to apply to pending cases. Act of April 29, 1992, ch. 513, art. 4, §§ 62 and 63, 1992 Minn.Laws 835, 950. In making clear that by procuring insurance a state governmental entity waives the limits of its tort liability "only to the extent that valid and collectible insurance * * * exceeds those limits and covers the claim," Minn.Stat.

§ 3.736, subd. 8 (1992), the legislature continues in its purpose of "protection of the fiscal integrity and financial stability" of state government. *Lienhard v. State*, 431 N.W.2d at 867.

The 1992 amendment of section 3.736, subd. 8 governs the decision in this case in which no final judgment has as yet been entered. *Holen v. Minneapolis–St. Paul Metropolitan Airport Comm'n*, 250 Minn 130, 136, 84 N.W.2d 282, 287 (1957). Plaintiffs argue that the amendment is a change in existing law that creates a constitutional question rather than a mere "clarification." Not so. Even if the amendment were an actual change in the statute, which we do not find it to be, a constitutional question is not thereby created unless the change divests a private vested right. *Id.* at 137, 84 N.W.2d at 287. The plaintiffs here enjoy no vested rights which would be divested or impaired by application of the amendment. There is no vested right in a judgment on appeal because the appeal suspends the judgment depriving it of its finality. *Id.* at 136, 84 N.W.2d at 287.

We hold that Gillette Children's Hospital, by procuring insurance, waived the limits of its governmental liability only to the extent that valid and collectible insurance, including applicable proceeds from the Minnesota Guaranty Fund, exceeds those limits and covers the claim. Plaintiffs are entitled to recover costs, disbursements, and post-verdict interest, however, even though these amounts may exceed the coverage so provided. *Lienhard v. State*, 431 N.W.2d at 864–865. The judgment of the court of appeals is reversed.

Reversed.

PAGE, J., took no part in the consideration or decision of this case.

---

1. The Minnesota Tort Claims Act, Minn.Stat. § 3.736, was enacted in 1976, the year after *Nieting* was decided.