**CITY OF RED WING, Minnesota, et al., Respondents,**

v.

**ELLSWORTH COMMUNITY SCHOOL DISTRICT, et al., Defendants,**

**Horace Mann Insurance Company, Appellant.**

**No. C9–00–549.**

Court of Appeals of Minnesota.

Oct. 3, 2000.

---

William R. Sieben, Sharon L. Van Dyck, Schwebel, Goetz & Sieben, P.A., Minneapolis, for respondents.

Robert J. McGuire, Jo Ann Strauss, Cousineau, McGuire & Anderson, Chartered, Minneapolis, for appellant.

Considered and decided by SCHUMACHER, Presiding Judge, KLAPHAKE, Judge, and HALBROOKS, Judge.

OPINION

KLAPHAKE, Judge

Horace Mann Insurance Company (Horace Mann) appeals from a grant of summary judgment to respondents, who include the City of Red Wing (Red Wing), Duane and Kathy Schuh (the Schuhs), and their minor daughter. The Schuhs' daughter, a Wisconsin high school student, was injured in a theatre located in Red Wing that had been rented by Peter Dulak, her Wisconsin teacher.

The Schuhs and their daughter brought two personal injury actions: one against Dulak and another against Red Wing, the Ellsworth Community School District (the Wisconsin school district), and Ken D. Smith, a general contractor whom the Schuhs later voluntarily dismissed from this action. The Schuhs also joined with Red Wing and Smith in bringing a separate declaratory judgment action against the Wisconsin school district, Dulak, and insurers Employers Mutual Casualty Company (EMC) and Horace Mann. EMC insured the Wisconsin school district and Dulak, while Horace Mann provided excess insurance to Dulak under a privately purchased policy.

Horace Mann moved for summary judgment, arguing that Wis. Stat. § 893.80(3) (1997) governed Dulak's liability in the Schuhs' negligence claim against him and that the EMC policy was primary. The motion was heard in May 1999.

In July 1999, while a decision was pending on the motion, the Schuhs' attorney informed the district court that the parties intended to settle with EMC for $5,000,000. The settlement further intended to release Dulak from any claim up to $6,000,000 and in excess of $7,000,000, thus limiting Dulak's exposure to the Horace Mann policy limits. The parties characterized the settlement as a *"Loy* Release." *See Drake v. Ryan,* 514 N.W.2d 785, 789 (Minn.1994) (endorsing settlements pursuant to *Loy v. Bunderson,* 107 Wis.2d 400,

320 N.W.2d 175 (1982), in which plaintiff releases tortfeasor and primary liability insurer up to limits of coverage, but expressly retains right to pursue claim for additional damages from excess liability insurer).

In August 1999, the district court issued an order consolidating the three actions. The court also issued an order denying Horace Mann's summary judgment motion and concluding that Wis. Stat. § 893.80 did not apply to these actions under a choice-of-law analysis. The court further concluded that EMC's commercial general liability policy, with limits of $1,000,000, was primary; EMC's umbrella policy, with limits of $5,000,000, was secondary; and Horace Mann's policy, with limits of $1,000,000, provided excess coverage over all other policies.

Horace Mann brought a second motion for partial summary judgment to dismiss all tort claims against Dulak, arguing that under Minnesota law, Dulak's liability is capped at $200,000 [1] and that the Schuhs had settled with Dulak well in excess of that amount. In February 2000, the district court denied Horace Mann's motion and concluded that under Minn.Stat. §§ 466.04 and 466.06 (1996), the Wisconsin school district's purchase of insurance waived the liability cap up to $6,000,000 and that the Horace Mann policy was "other collectible insurance" under Minn.Stat. § 466.06.

Horace Mann appeals.

## FACTS

On November 11, 1997, the Schuhs' 16–year–old daughter fell through an open, unguarded trap door on the stage of the T.B. Sheldon Theatre in Red Wing. She struck the cement floor below and is now a quadriplegic.

At the time of her fall, the Schuhs' daughter was a Wisconsin high school junior. She was taking a theater class, which was taught by Dulak, a Minnesota resident employed by the Wisconsin school district.

In May 1997, Dulak, with the knowledge and approval of the Wisconsin school district, rented the theater for the class production of *The Wizard of Oz*. The theater is in Red Wing. Dulak signed the theater's standard rental contract, which required him to obtain up to $1,000,000 in liability coverage to cover losses associated with the use of the theater and to indemnify the theater for any losses for which it or the city might be deemed responsible. The agreement also required Dulak to obtain workers' compensation insurance in amounts mandated by the State of Minnesota.

At the time of the accident, the Wisconsin school district and Dulak, as its employee, were insured by EMC under two liability policies: the first provided $1,000,000 for bodily injury claims and the second provided $5,000,000 of umbrella liability coverage. Dulak was also insured by Horace Mann under a policy issued to the Wisconsin Education Association Council and National Education Association. The Horace Mann policy provided Dulak with $1,000,000 of liability coverage for losses "sustained by the insured by reason of liability imposed by law for damage caused by an occurrence in the course of the insured's educational employment activities."

## ISSUES

1. Is Dulak, an employee of a Wisconsin school district, entitled to similar limitations on liability as any employee of a Minnesota school district?

2. Does the Horace Mann policy constitute "valid and collectible insurance" under Minn.Stat. § 466.06?

## ANALYSIS

■ Summary judgment is appropriately granted when no genuine issues of ma-

---

**1.** This liability limit has been raised to $300,000, for claims arising from acts or omissions taking place on or after January 1, 1998. *See* 1997 Minn. Laws ch. 210, §§ 3, 4, 5.

terial fact exist and either party is entitled to judgment as a matter of law. Minn. R. Civ. P. 56.03. Statutory construction is a question of law and fully reviewable by this court. *Grinnell Mut. Reinsurance Co. v. City of Cokato,* 603 N.W.2d 665, 667 (Minn.App.1999).

## I.

In its first summary judgment motion, Horace Mann argued that Dulak's liability is governed by Wisconsin municipal liability law, which caps any tort damages recoverable against Dulak at $50,000. Wis. Stat. § 893.80(3) (1997); *see Linville v. City of Janesville,* 184 Wis.2d 705, 516 N.W.2d 427, 433 (1994) (city's purchase of liability insurance in excess of $50,000 does not waive statutory liability cap for municipal tortfeasors); *Keefer v. State Farm Fire & Cas. Co.,* 127 Wis.2d 41, 377 N.W.2d 632, 634 (1985) (plain language of Wisconsin statute limits recovery from governmental employee to statutory amount). In Minnesota, at the time of the accident, a municipality's tort liability was capped at $200,000 per claimant; this cap did not apply, however, if waived by the purchase of insurance with higher limits. *See* Minn.Stat. §§ 466.04, subd. 1(1), 466.06 (1996).

Applying a choice-of-law analysis, the district court concluded that an actual conflict existed between Wisconsin and Minnesota law and that sufficient contacts existed with either state so that its laws could be constitutionally applied. The court then examined the five choice-influencing factors, and concluded that the most significant of those factors, the predictability of result, maintenance of interstate order, and advancement of Minnesota's interests, all favored application of Minnesota law. *See Jepson v. General Cas. Co.,* 513 N.W.2d 467, 470 (Minn.1994).

After submission of their motion papers, the parties reached a settlement patterned after the one in *Drake v. Ryan,* 514 N.W.2d 785 (Minn.1994). In a letter to the trial court, the Schuhs' attorney explained that under the terms of this settlement, the parties released Dulak from any claim up to $6,000,000 and in excess of $7,000,000, thus seeking to limit Dulak's exposure to the Horace Mann policy limits. In its order denying Horace Mann's summary judgment motion and concluding that Wisconsin law did not apply, the district court did not specifically address the direct effect of this settlement on its decision.

Horace Mann thereafter brought a second summary judgment motion, arguing that even under Minnesota law, Dulak's liability was capped at $200,000; that the Wisconsin school district's purchase of insurance did not waive Dulak's liability limits, citing *Nelson v. House,* 402 N.W.2d 639, 641 (Minn.App.1987), *review denied* (Minn. May 18, 1987); and that the Schuhs have settled with Dulak well in excess of that cap. Thus, Horace Mann argued, its policy could not be considered "valid and collectible" insurance under the terms of Minn.Stat. § 466.06, so as to waive Dulak's limited liability cap of $200,000.

In opposition to Horace Mann's second motion, the Schuhs argued that Dulak should be treated as any other employee of a private corporation and that "there is no precedent for cloaking a sister state's municipal employee with Minnesota's sovereignty." The Schuhs further argued that Wisconsin functions as an independent sovereign only within its own borders and upon crossing into Minnesota, it loses its sovereignty and assumes the status of a private corporation.

As support for their position, the Schuhs cited *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). In that case, California residents, who were injured in California by a negligent employee of the University of Nevada, brought suit in California court. Nevada claimed that its liability was limited to a $25,000 cap, as set out in Nevada statutes. The Supreme Court held that Nevada could not claim immunity from suit in California courts, but that states are free to accord

each other immunity or to respect established limits of liability as a matter of comity. *Id.* at 416, 99 S.Ct. at 1186. The Court upheld the California court's decision to enforce its own policy of full compensation, noting that in "further implementation of that policy, California has unequivocally waived its own immunity from liability for the torts committed by its own agents and authorized full recovery even against the sovereign." *Id.* at 424, 99 S.Ct. at 1190.

 Contrary to the Schuhs' reading of *Hall,* employees of a sister state do not become private citizens, losing all immunities, once they cross state lines. Rather, "questions of interstate suability must be determined under the law of the forum," which require a court to examine its own state's policies and whether "this state would permit itself to be sued if it had engaged in the conduct assigned to [the sister state] in the present action." *Mianecki v. Second Judicial Dist. Ct.,* 99 Nev. 93, 658 P.2d 422, 424 (1983); *see also Struebin v. State,* 322 N.W.2d 84, 86 (Iowa 1982) (Iowa permits full compensation, even against the state for negligent maintenance of highways). Thus, the district court properly examined whether Minnesota's municipal tort liability law, as set out in Minn.Stat. § 466.06, would allow the Schuhs to recover under the Horace Mann policy.[2]

## II.

 In its order denying Horace Mann's second summary judgment motion, the district court concluded that the Wisconsin school district's purchase of $6,000,000 in insurance waived the liability limits for itself and Dulak, that the Wis-

consin school district settled with the Schuhs for less than $6,000,000, and that Dulak's excess Horace Mann policy became other valid and collectible insurance to the amount of the Wisconsin school district's waiver of $6,000,000. Resolution of this case rests on application of the provisions of Minn.Stat. § 466.06 and the meaning of "valid and collectible insurance."

A background of municipal tort liability sets the stage for our discussion. In 1962, the supreme court held that the doctrine of sovereign immunity, which excepted the state and its political subdivisions from liability for tortious conduct, was "unjust" and "archaic"; the court prospectively overruled the doctrine with respect to school districts and other subdivisions of the state. *Spanel v. Mounds View Sch. Dist.,* 264 Minn. 279, 292–94, 118 N.W.2d 795, 803–04 (1962); *see also Nieting v. Blondell,* 306 Minn. 122, 132, 235 N.W.2d 597, 603 (1975) (prospectively abolishing tort immunity of state). The legislature followed each decision by abolishing the defense of sovereign immunity. 1976 Minn. Laws ch. 331, § 33 (enacting Minn. Stat. § 3.736); 1963 Minn. Laws ch. 798, §§ 1–17 (enacting Minn.Stat. §§ 466.01– 17).

In each instance, the legislature provided certain exceptions to tort liability, most notably for "discretionary" acts. *See* Minn.Stat. §§ 3.736, subd. 3 (declaring that state and its employees are not liable for certain types of losses); 466.03 (setting out numerous exceptions in which municipality shall be immune from liability). The legislature also provided for certain monetary limits or "caps" on damages. Minn. Stat. §§ 3.376, subd. 4; 466.04. These lim-

---

**2.** Even under a choice-of-law analysis, the threshold issue is whether application of one state's law over another is "outcome determinative" or creates an actual conflict. *Jepson v. General Cas. Co.,* 513 N.W.2d 467, 469 (Minn.1994). Thus, if Minnesota law would not allow recovery from Horace Mann under the facts of this case, and it is undisputed that Wisconsin law would not allow recovery, then

the choice-of-law analysis ends here and we need not consider the remaining choice-of-law factors. *See Richie v. Paramount Pictures Corp.,* 544 N.W.2d 21, 29–30 (Minn.1996) (where no actual conflict exists between Minnesota and New York law, court "need not reach issue of which law should be applied").

its apply to the liability of a governmental entity and its employees acting within the scope of their employment or in the performance of their duty. Minn.Stat. §§ 3.376, subd. 4; 466.04, subd. 1a.

■ These liability limits can be waived under Minn.Stat. § 466.06 (1996), which states in pertinent part:

The governing body of any municipality may procure insurance against liability of the municipality and its * * * employees * * * for damages * * * resulting from its torts and those of its * * * employees * * *, including torts specified in section 466.03 for which the municipality is immune from liability. The insurance may provide protection in excess of the limit of liability imposed by section 466.04. * * * *The procurement of such insurance constitutes a waiver of the limits of governmental liability under section 466.04 only to the extent that valid and collectible insurance, including where applicable, proceeds from the Minnesota Guarantee Fund, exceeds those limits and covers the claim.* The purchase of insurance has no other effect on the liability of the municipality or its employees.

(Emphasis added.) Absent such a waiver, however, district courts are obliged to impose the applicable liability limit "whenever damages exceed the statutory limit." *Snyder v. City of Minneapolis,* 441 N.W.2d 781, 788 (Minn.1989) (liability limits of Minn.Stat. § 466.04 construed to be "complete defense to all damages in excess" of $200,000).

The issue here involves whether the Horace Mann policy can be considered "valid and collectible" insurance, so as to be included in the calculation of the extent of the waiver of liability limits. On its face, the phrase "valid and collectible" is ambiguous, because it is susceptible to more than one reasonable interpretation when applied to the facts of this case. *See Tuma v. Commissioner of Econ. Sec.,* 386 N.W.2d 702, 706 (Minn.1986). One interpretation allows inclusion of the Horace

Mann policy, a liability policy purchased by an employee of a school district, to be included in the calculation of the extent of the waiver; the other interpretation excludes the Horace Mann policy.

■ When the language of a statute is ambiguous and not "explicit," we must ascertain the intent of the legislature by considering, among other matters, the "circumstances under which [the law] was enacted," the "contemporaneous legislative history," and "[l]egislative * * * interpretations of the statute." Minn.Stat. § 645.16 (1998). In addition, we must read the statute as a whole to "give effect to all its provisions." *Id.*

Prior to 1992, Minn.Stat. § 466.06 stated:

The procurement of such insurance constitutes a waiver of the limits of governmental liability under section 466.04 to the extent of the liability stated in the policy but has no effect on the liability of the municipality beyond the coverage so provided.

Minn.Stat. § 466.06 (1990). Under this pre–1992 language, a municipality could waive its limits of liability by procuring insurance and the extent of that waiver was based on the coverage provided by "the policy" purchased by the municipality.

In 1992, the legislature amended Minn. Stat. § 466.06 and the language of Minn. Stat. § 3.376, striking the phrase "stated in the policy" and substituting the phrase "valid and collectible insurance." 1992 Minn. Laws ch. 513, art. 4, §§ 26, 44. These amendments were enacted in response to a decision from this court, *Pirkov–Middaugh v. Gillette Children's Hosp.,* 479 N.W.2d 63, 68 (Minn.App.1991), in which we held that a hospital had waived its liability limits to the extent of coverage "stated in the policy" it had purchased, even though that insurance was no longer available because the insurer had become insolvent. The supreme court reversed our decision, based on the "plain meaning" of the pre–1992 statute; the

court further examined the 1992 amendments and the legislature's explanation that these amendments were intended to "clarify" and not change existing law. *Pirkov–Middaugh v. Gillette Children's Hosp.*, 495 N.W.2d 608, 610–11 (Minn.1993) (citing 1992 Minn. Laws ch. 513, art. 4, § 62 ("The amendments in this article to Minnesota Statutes, sections 3.736 * * * and 466.06, are intended to clarify, rather than to change, the original intent of the statutes amended.")). Given the legislature's intent to "clarify" and not change existing law by its amendment to Minn. Stat. § 466.06, we must read the current language of Minn.Stat. § 466.06 as consistent with its prior language.

Thus, Minn.Stat. § 466.06 and its waiver apply only to a school district's purchase of insurance; any private insurance purchased by a school district employee cannot be used to calculate the total extent of that waiver. This interpretation is consistent with the pre–1992 language of Minn. Stat. § 466.06 and with case law that interprets Minn.Stat. § 466.06 as dealing only with a municipality's ability to waive its liability limits. *See Nelson*, 402 N.W.2d at 641 (municipality's tort immunity not waived when employee purchased private liability insurance); *see also Cairl v. State*, 323 N.W.2d 20, 26–27 (Minn.1982) (purchase of professional liability insurance by state employee did not constitute waiver of immunity). This interpretation also protects municipal employees by limiting their exposure to the liability limits set out in Minn.Stat. § 466.04, while still requiring the municipality to indemnify those employees found liable and not covered by privately purchased insurance. *See* Minn. Stat. § 466.07 (1998); *Grinnell*, 603 N.W.2d at 667 (municipal employees not entitled to indemnification under Minn. Stat. § 466.07, for amounts covered by employees' private insurance). Finally, this interpretation furthers the legislative purposes behind the establishment of these limits on tort liability, which have been characterized as the " 'protection of the fiscal integrity and financial stability' of state government." *Pirkov–Middaugh*, 495 N.W.2d at 611 (citing *Lienhard v. State*, 431 N.W.2d 861, 867 (Minn.1988)).

## DECISION

Dulak's purchase of private, excess insurance through Horace Mann is not "valid and collectible insurance" that can be considered when determining the extent of the Wisconsin school district's waiver of its liability limits. Because Dulak's liability is limited to $200,000 and because the parties here have settled well in excess of that limit, the Horace Mann policy is not "valid and collectible" insurance under Minn.Stat. § 466.06.

The district court's denial of Horace Mann's second motion for summary judgment is therefore reversed.

**Reversed.**