Katherine McCARTY, et
al., Defendants,

Mitchell Lanz, et al., Appellants,

v.

CITY of MINNEAPOLIS, Respondent,

Minneapolis Downtown Council,
et al., Defendants,

Federal Signal Corporation,
Respondent,

and

Federal Signal Corporation,
Third–Party Plaintiff,

v.

Ford Motor Company and Code 3,
Inc., Third–Party Defendants,

and

Minneapolis Downtown Council,
Third–Party Plaintiff,

v.

Hennepin County, Third–
Party Defendants.

No. C6–02–755.

Court of Appeals of Minnesota.

Dec. 13, 2002.

354

Richard L. Gill, Gary L. Wilson, Philip Sieff, Robins, Kaplan, Miller & Ciresi, L.L.P., Minneapolis, for appellants.

Eric J. Magnuson, Diane B. Bratvold, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, for respondent Federal Signal Corporation.

Jay Heffern, Minneapolis City Attorney, James A. Moore, Assistant Minneapolis City Attorney, Minneapolis, for respondent City of Minneapolis.

Considered and decided by MINGE, Judge, WRIGHT, Judge, and MULALLY, Judge.*

## OPINION

MINGE, Judge.

Mitchell Lanz, father and guardian of Erin and Michael Lanz, seeks review of a reduction in the amount of damages to be paid by Federal Signal Corporation because of the statutory limitations placed on minimally liable joint tortfeasors.  Appel-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

lant argues that Federal Signal Corporation should be solely liable for damages above the liability cap on municipalities and that the statutory limitation on minimally liable joint tortfeasors is inapplicable. We affirm.

## FACTS

At the Holidazzle Parade in downtown Minneapolis on the evening of December 4, 1998, Minneapolis police officer Thomas Sawina accidentally depressed the accelerator rather than the brake on a police van. As a result, the van lurched into a crowd of parade watchers. Two people were killed and many were seriously injured. Erin Lanz, then age seven, and her brother, Michael, then age four, were among the injured. Erin's injuries required the amputation of her right arm above the elbow.

The police van was equipped with an "after-market flasher device" manufactured by Federal Signal Corporation and installed by a city public works employee. The purpose of the device is to increase visibility of the vehicle. When the driver depresses the brake, the device causes the brake and back-up lights to flash rapidly. Expert testimony established that this device also had a negative side effect: latent electrical currents would disable the van's brake-shift interlock. The brake-shift interlock is the safety component that prevents shifting a vehicle from "park" to "drive" unless the driver has a foot on the brake pedal. As a result, when Officer Sawina accidentally pressed the accelerator instead of the brake pedal while shifting from "park" to "drive," the brake-shift interlock failed to perform and the van accelerated into the Holidazzle crowd, causing death and injury.

Mitchell Lanz, father and guardian of Erin and Michael, and other injured parties brought suit against the City of Minneapolis and Federal Signal Corporation. Plaintiffs claimed the city was liable for the negligence of Officer Sawina, and Federal Signal was negligent in failing to warn that use of the flasher device could cause the brake-shift interlock to disengage. Federal Signal filed a third-party claim against Ford Motor Company. Ford Motor Company ultimately settled with all plaintiffs, including the Lanzes. The jury awarded $3.815 million to Erin Lanz, $30,000 to Michael Lanz, and $172,455.06 to Mitchell Lanz. The jury apportioned liability 87.5% to the City of Minneapolis, 12.5% to Federal Signal, and 0% to Ford.[1]

After trial, the district court limited and apportioned liability of the two defendants under Minnesota law. First, it applied Minn.Stat. § 466.04 (2002), which limits the tort liability of any municipality to $750,000[2] for all plaintiffs in a single occurrence and limits the tort liability of any municipality to $300,000 for a single plaintiff. As a result, the city's liability to Erin Lanz was capped at $300,000 and, due to the presence of numerous injured parties, liability to Michael Lanz was capped at $7,522; and liability to Mitchell Lanz was capped at $14,185. Second, the district court applied Minn.Stat. § 604.02 (2002), which limits the tort liability of defendants with 15% or less of fault to four times their share of liability, commonly termed the "15 × 4" rule. As a result, the court capped Federal Signal's liability at four times 12.5% or 50% of the verdict amount. The Lanzes' motion to amend the judgment was denied. The Lanzes appeal the judgment as to the City of Minneapolis and

1. The Lanz settlement with Ford was for the sum of $1.194 million. It does not appear that the jury was aware of that settlement.

2. Statutory limits were increased as of January 1, 2000, to $1,000,000 per occurrence. Minn.Stat. § 466.04, subd. 1(a)(3) (2002).

Federal Signal. The City of Minneapolis did not file a brief.

## ISSUES

Does the ceiling on municipal liability in Minn.Stat. § 466.04 (2002) preclude the limit on liability of a joint tortfeasor in Minn.Stat. § 604.02 (2002) for damages in excess of the amount for which the municipality is liable?

## ANALYSIS

In this case, we are asked to review and construe the interaction between two statutes: Minn.Stat. § 604.02 (2002), apportioning damages when two or more parties are jointly liable, and Minn. Stat. § 466.04 (2002), limiting the liability of a municipality. Statutory construction is a question of law which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

The relevant portions of the two critical statutes in this case require careful consideration. Chapter 466 governs tort liability of Minnesota political subdivisions. Minn. Stat. § 466.04 provides for the maximum liability of municipalities as follows:

> Liability of any municipality on any claim * * * shall not exceed:
>
> (1) $300,000 when the claim is one for death by wrongful act or omission and $300,000 to any claimant in any other case;
>
> (2) $750,000 for any number of claims arising out of a single occurrence * * *.

Minn.Stat. § 466.04, subd. 1(a). Minnesota has a ceiling on the liability of joint tortfeasors. Minn.Stat. § 604.02 provides as follows:

> When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except that each is jointly and severally liable for the whole award. * * * [A] person whose fault is 15 percent or less is liable for a percentage of the whole award no greater than four times the percentage of fault, including any amount reallocated to that person under subdivision 2.
>
> If the state or a municipality as defined in section 466.01 is jointly liable, and its fault is less than 35 percent, it is jointly and severally liable for a percentage of the whole award no greater than twice the amount of fault, including any amount reallocated to the state or municipality under subdivision 2.

Minn.Stat. § 604.02, subd. 1.

Because there were only two responsible parties as defendants at the time the matter went to the jury, appellants argue that there can be no joint and several liability above the cap as applied in the case.[3] Although the maximum recovery against the city is $750,000 for a single occurrence, due to the presence of other injured parties, the city's payment to the Lanzes is a prorated part of the $750,000 cap and was calculated to be only $321,707. Appellants argue that the "15 × 4" rule should not apply above $321,707. Instead, appellants claim defendant Federal Signal should be liable for all damages above that figure. Stated differently, the appellants are claiming that the reach of section 604.02,

---

**3.** The Ford settlement with the Lanzes suggests Ford was or could have been a "joint tortfeasor" with respondent Federal Signal. Had Ford been a joint tortfeasor, the claims of appellant that there was no joint tortfeasor left after the City of Minneapolis reached its limits would not be supported by the record.

However, the record is silent on this matter and the parties have not argued this point. Given the result we reach in this case, Ford's status is not relevant to the outcome and we do not further consider that potential dimension of this proceeding.

subdivision 1 is *pro tanto* limited by the permissible recovery under Minn.Stat. § 466.04.

Appellants press that there is a significant difference between the operative effect of the word *liability* as opposed to the word *damages* and that this distinction between *liability* and *damages* has a bearing on the reach of the "15 × 4" rule. If a statute destroys liability, appellants argue that joint and several liability does not exist. On the other hand, if only damages are being affected, then joint and several liability may persist and the "15 × 4" may apply.

Appellants argue that Minn.Stat. § 466.04 destroys joint and several liability for damages that exceed the statutory limits. They claim this is because § 466.04 is a cap on the very *liability* of the city; not just a cap on the *damages* to be paid to the injured parties. To support this argument, appellants point to the language of the statute itself: "*Liability* of any municipality on any claim within the scope of sections 466.01 to 461.15 shall not exceed * * *." Minn.Stat. § 466.04, subd. 1(a) (emphasis added). Appellants interpret this language to mean that the municipality's *liability* is extinguished but the damages incurred are not affected. Appellants further argue that *Snyder v. City of Minneapolis* supports this distinction between *damages* and *liability* by describing Minn. Stat. § 466.04 as a limit on "municipal tort liability." *Snyder v. City of Minneapolis,* 441 N.W.2d 781, 788 (1989). If appellants' statutory interpretation were correct, Federal Signal would be solely liable for damages above the municipality cap imposed by section 466.04 and the "15 × 4" rule would be subject to a large exception.

In *Snyder,* this court actually held that Minn.Stat. § 466.04 caps a municipality's *damages,* but does not eliminate *liability* using the following language: "[Minn.Stat.

§ 466.04] is not a defense to liability, but is merely a limitation on damages recoverable." *Snyder,* 422 N.W.2d at 753, *aff'd as modified,* 441 N.W.2d 781 (Minn.1989). Other cases also support the argument that section 466.04 is merely a limitation on *damages* recoverable from the municipality. *City of Red Wing v. Ellsworth Cmty. Sch. Dist.,* 617 N.W.2d 602, 607 (Minn.App.2000) (referring to Minn.Stat. § 466.04 as a "monetary limit[ ] or 'cap[ ]' on damages" (citation omitted)).

Appellants reference employment situations where two defendants cause injury. In *Decker v. Brunkow,* the plaintiff fell while working on property her employer leased from the building owner. *Decker v. Brunkow,* 557 N.W.2d 360 (Minn.App. 1996), *review denied* (Minn. Feb. 26, 1997). This court held· the building owner was solely liable even though the jury only assigned five percent of the liability to him. *Id.* In *Edmonds v. Compagnie Generale Transatlantique,* the court held that a defendant may be required to pay more than his share of damages if the other tortfeasor is protected by immunity. *Edmonds v. Compagnie Generale Transatlantique,* 443 U.S. 256, 260, 99 S.Ct. 2753, 2756, 61 L.Ed.2d 521 (1979).

The *Decker* and *Edmonds* cases are distinguishable from the matter under consideration. In *Decker,* the employer was not liable in tort to the employee, but instead had an obligation under the worker's compensation system. 557 N.W.2d at 361. The building owner was liable under a common law tort action. *Id.* Because of the differences in the sources of their liability, the two defendants were "neither jointly liable nor jointly and severally liable" to the injured party for any portion of the damages. *Id.; Decker,* 557 N.W.2d at 362 (quoting *Kempa v. E.W. Coons Co.,* 370 N.W.2d 414, 420 (Minn.1985)).

*Edmonds* involved the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 901 *et seq.* (1970)) under which an injured longshoreman could recover damages from the shipowner, less an amount attributed to his own negligence. *Edmonds,* 443 U.S. at 263–71, 99 S.Ct. at 2758–62. The shipowner's liability is not affected if the longshoreman's employer and fellow employees were largely at fault in causing the longshoreman's injury. *Id.* at 263–64, 99 S.Ct. at 2758. In *Edmonds,* there was no joint and several liability between the shipowner and the employer because, as in *Decker,* the employer was liable under a unique arrangement and as a result immune from tort liability to its longshoreman employee. *Edmonds,* 443 U.S. at 271–73, 99 S.Ct. at 2762–63. In contrast, in the present case, both respondents are jointly and severally liable for at least part of the damages.

Appellants are certainly correct, joint and several liability is compromised by the dollar levels of the municipal liability limits. If the damage levels were stupendous, for example in the billions of dollars, the joint and several liability share of the municipality would be minimal. Effective joint and several liability would then be minimal. However, appellant does not cite to any precedent for such a distinction for partial joint and several liability.[4]

The legislature could have adopted the position the appellants are urging but did not. The first sentence of Minn.Stat. § 604.02, subd. 1, dealing with the contri-

bution process uses the phrase, "jointly and severally liable for the *whole* award." Minn.Stat. § 604.02, subd. 1 (emphasis added). The second sentence in that subsection contains the "15 × 4" rule. *Id.* It is significant that in defining the reach of the "15 × 4" rule, the second sentence does not limit the "15 × 4" rule to situations involving joint and several liability for the *whole* award. Furthermore, we note that twice in section 604.02, subdivision 1, there are cross-references to the municipal liability statutes. These cross-references indicate that the "15 × 4" rule was not crafted in ignorance of the municipal liability limits or how the two statutes might, as here, combine to limit full recovery of plaintiffs.

Appellants urge that in deciding this case we should weigh larger policy considerations that have influenced allocation of liability in the development of our tort system. We acknowledge that allocation of risk, fair compensation of injured parties, and a variety of other considerations are part of such larger debate, and that in this case at least three public policy considerations collide. We briefly address such considerations but emphasize that our discussion arises in the unique circumstances of this case and that we do not intend this discussion to confine policy evaluation of the cited statutes in other contexts. The first of these policies is that injured parties who are not at fault should recover their full compensation. *See Tuenge v. Konetski,* 320 N.W.2d 420, 422 (Minn.1982) (stating there is a general

---

4. Joint and several liability may be affected by insolvency. Parties may be judgment proof or they may file for bankruptcy. Short of the bankruptcy, the effect presumably does not destroy joint and several liability. All that happens is that the recovery is uncollectible. The bankruptcy appears to introduce another dimension. It discharges the debtor from liability and debts. *See* 11 U.S.C. § 524(a) (2000). If appellants' argument that limits on

liability of the joint tortfeasors preclude operation of the "15 × 4" rule of Minn.Stat. § 604.02, subd. 1, were to prevail, there could be significant consequences. Anyone unhappy with the limited recovery available from an insolvent defendant could perhaps force such a debtor defendant into an involuntary bankruptcy to avoid application of the "15 × 4" rule and to trigger full liability of the remaining solvent defendant.

state policy interest in seeing that tort victims are compensated for their injuries). This court is not unmindful of the injustice of less than full compensation to a family and child who have suffered a terrible injury.

The second policy is governmental immunity. Municipal tort liability has a long history. Limits on such liability, as are found in Minn.Stat. § 466.04, subd. 1, are the culmination of policy compromises between the old rule of sovereign immunity and the modern policy of full compensation of injured parties. In *Snyder*, this court held that a liability cap on municipal liability is "rationally related to the legitimate government objective of insuring fiscal stability to meet and carry out the manifold responsibilities of government." *Snyder*, 441 N.W.2d at 789 (quoting *Lienhard v. State*, 431 N.W.2d 861, 868 (Minn.1988)); *cf. Loven v. City of Minneapolis*, 639 N.W.2d 869 (Minn.2002).

The third policy consideration is that minimally at fault defendants should not have to pay disproportionately large damage amounts. The reach of this policy is at the core of this case. The legislature apparently recognized that there were harsh results and risks produced by unlimited joint and several liability for defendants with lesser levels of fault. Minn. Stat. § 604.02, subd. 1. The "15 × 4" rule is a response that limits recovery. Still, it appears that by allowing injured parties to recover at least 400% of any single defendant's share of such joint liability, the legislature indicated it was sympathetic to the interests of injured parties. Whether the right of total recovery against joint tortfeasors above 15% of fault or the limit of recovery to 400% of damages attributable for those with fault of 15% or less is an appropriate compromise is a judgment call. The legislature struck a balance.

The policy determination by the legislature may leave some unsatisfied. In this case, the two statutory limits on liability work together to shift part of the loss to the victims of tortious conduct, their families, and the broader community. Arguably, Federal Signal and insurance may better spread the loss to the larger community as claimed by the appellants. However, it is not the function of this court to establish this policy. We are an error correcting court. Certain policy development is appropriately left to the supreme court. Otherwise, the general responsibility for formulation of such policy is the function of the legislature.

We determine that the language of the statutes in question in this case is relatively clear. This court must do its best to honor the legislative intent and make sure the statutory scheme is enforced within constitutional constraints.

## DECISION

■ The limits on recovery by injured parties due to the caps on municipal liability in Minn.Stat. § 466.04, subd. 1 (2002) do not deny the remaining joint tortfeasor the protections of the "15 × 4" rule in Minn. Stat. § 604.02, subd. 1 (2002). Accordingly, we affirm the district court's determination of respondent's liability.

**Affirmed.**